**Ivy J. PINKNEY, Plaintiff,**

v.

**William L. ROBINSON, et al., Defendants.**

**Civ. A. No. 93–1557 (JHG).**

United States District Court, District of Columbia.

Jan. 23, 1996.

Phillip Robert Kete, Alice Lane Bodley, Barbara Jean Kraft, Martin, Bodley & Kraft, P.C., Washington, DC, for plaintiff.

Robert Patterson Watkins, Jonathan P. Bach, Williams & Connolly, Washington, DC, for William L. Robinson.

George C. Valentine, Office of Corporation Counsel, D.C., Washington, DC, for District of Columbia, District of Columbia School of Law, Board of Governors of the District of Columbia School, Vincent Gray, Inez Smith Reid, and Lee Satterfield.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

Presently pending are the defendants' motions for partial summary judgment. For the reasons stated below, the motions will be denied.

### I. Background

The plaintiff, Ivy J. Pinkney, alleges that William J. Robinson, Dean of the District of Columbia School of Law ("DCSL"), sexually harassed her. Pinkney claims that during the period that she was Robinson's confidential executive secretary, which spanned September 8, 1989 through November 26, 1991, Robinson "engaged in a repeated and consistent pattern of sexual harassment [that] included explicit remarks and sexual innuendo, fondling his sexual organs in Ms. Pinkney's presence, offensive and unwanted touching, and other harassing and degrading acts." Amended Complaint, at ¶¶ 4 & 10.

Robinson terminated Pinkney's employment. Pinkney claims that she was fired on November 26, 1991, because she would not submit to his advances. Amended Complaint, at ¶ 15. Robinson, however, contends that Pinkney was fired on August 27, 1991, because of her poor performance. Memorandum of Points and Authorities in Support of Defendants' Motion for Partial Summary Judgment ("Defendants' Summary Judgment Motion under the 1991 Act"), at 9 (citing deposition of William L. Robinson of December 2, 1993, at pp. 61–62 & 81). Robinson also states that although Pinkney was terminated on August 27, 1991, the termination was not effective for 90 days. *Id.*

Pinkney filed a charge with the Equal Employment Opportunity Commission ("EEOC"). On April 29, 1993, she received her right to sue letter from the local field

office and, on July 28, 1993, she filed this action. Pinkney filed her Amended Complaint on January 18, 1994.

Pinkney's Amended Complaint consists of four counts. In Count I, Pinkney charged that the sexual harassment by Robinson violated Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.* (1988 & Supp. V 1993), and that Defendants DCSL and the District of Columbia are liable for the misconduct of their agent, Robinson. In Count II, she alleged that sexual harassment by Robinson violated Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §§ 1681–1688 (1994), violations for which Defendants DCSL, a law school receiving federal financial assistance, and the District are liable. In Count III, Pinkney averred that the District, Robinson, and DCSL Board of Directors Vincent Gray, Inez Smith Reid and Lee Satterfield violated 42 U.S.C. § 1983, and in Count IV, she sought damages from Robinson, Gray, Reid and Satterfield for intentional infliction of emotional distress.

On May 20, 1994, this Court dismissed Count III as to Defendants Gray, Reid, Satterfield and the District, and the plaintiff withdrew her claim in Count IV as to Defendants Gray, Reid and Satterfield. On October 13, 1995, this Court denied Pinkney's motion to amend the judgment of May 20, 1994; denied Robinson's motion for partial summary judgment on various grounds; and denied in part and granted in part Robinson's motion to dismiss the plaintiff's request for a jury trial and damages under the Civil Rights Act of 1991 ("1991 Act"), R.S. § 1977A, Section 102, Pub.L. No. 102–166, 105 Stat. 1072 (Nov. 21, 1991), codified at 42 U.S.C. § 1981 (Supp. V 1993).

In its Memorandum Opinion and Order of October 13, 1995, this Court held that, based upon *Landgraf v. USI Film Products,* —— U.S. ——, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), the provisions of section 102 of the Civil Rights Act of 1991 are limited to reme-dy post–1991 Act conduct. Consequently, the plaintiff was not entitled to the broad remedies of the 1991 Act as relief for discriminatory conduct that occurred prior to enactment of the 1991 Act. But, the plaintiff could be entitled to the 1991 Act's remedial provisions for alleged discriminatory conduct that occurred in the six-day period spanning November 21, 1991 to November 26, 1991, her final days as Robinson's executive secretary. Because in its previous motion, the defendants had not complied with Local Rule 108(h), the Court did not consider the additional materials submitted by either party, consideration of which would have required the Court to convert the defendants' motion to dismiss to a motion for summary judgment. *See* Fed.R.Civ.P. 12(b). The Court nevertheless granted the parties leave to move for summary judgment, if they complied with Local Rule 108(h).

On November 3, 1995, the defendants moved for partial summary judgment on Pinkney's hostile work environment claim brought under the 1991 Act, and on December 1, 1995, the defendants moved for partial summary judgment on Pinkney's hostile work environment claims brought under Title VII and Title IX. On December 15, 1995, Pinkney filed her brief, opposing both. On January 11, 1996, the defendants filed an untimely reply to Pinkney's opposition.[1]

## II. Discussion

Summary judgment is appropriate when there is "no genuine issue as to any material fact and … the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are any genuine issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In considering a motion for summary judgment, the "evidence of the non-movant is to be

---

1. Under Local Rule 108(d), the defendants' reply was due "within five days after service of the memorandum of opposition," which was served on December 15, 1995. The defendants did not seek an extension from the Court nor did they seek leave to file their reply untimely. Accordingly, the defendants' reply will not be considered by this Court in resolving the defendants' motions for partial summary judgment.

believed, and all justifiable inferences are to be drawn in [her] favor." *Id.* at 255, 106 S.Ct. at 2513. At the same time, however, Rule 56 places a burden on the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (internal quotations omitted).

## A. The Motion for Partial Summary Judgment under the Civil Rights Act of 1991

■ In moving for partial summary judgment on the claims brought under the 1991 Act, the defendants contend that while Pinkney claims she was sexually harassed from September 8, 1989, until November 26, 1991, she "has completely failed to identify any alleged sexual harassment directed to her after November 21, 1991." Defendants' Summary Judgment Motion under the 1991 Act, *supra* at 6. The defendants point out that although Pinkney testified about a number of "alleged incidents occurring at various points throughout her tenure, at no point does she specifically testify that any alleged act of sexual harassment occurred on or after November 21, 1991." *Id.* at 7.

With regard to her termination, the defendants argue that Pinkney was terminated on August 21, 1991, when she was fired in the course of a performance evaluation, but contend she was told that she would have ninety days in which to find another job. *Id.* at 9 (citing deposition of William L. Robinson of December 2, 1993, at pp. 61–62 & 81). Pinkney was not, however, given "official notification of her termination in the form of a letter from the Dean," *id.,* until November 26, 1991.

Because Robinson did not reduce his decision to writing until November 26, 1991, Pinkney was paid until December 15, 1991, remaining on administrative leave after November 26, 1991. *Id.* (quoting Exhibit 3, Letter from William J. Robinson to Ivy J. Pinkney of November 26, 1991). The defendants argue that it is the date of the termination that matters, not the date that Pinkney felt its impact; because the decision was made prior to November 21, 1991, the termination decision itself does not entitle Pinkney to a jury trial or the broad damages available under the 1991 Act.

In opposition, Pinkney argues that at least two genuine issues of material fact preclude summary judgment. First, Pinkney claims that Robinson's harassment was continuous and ongoing throughout her employment, and that "Robinson put his hand on her inner right thigh ... 'just before [she] left'." Plaintiff's Opposition to Defendants' Motion for Partial Summary Judgment on Plaintiffs Claim Under the Civil Rights Act of 1991 and Opposition to Defendants' Motion for Partial Summary Judgment on Plaintiff's Hostile Work Environment Claim Under Title IX of the Education Amendments of 1972 and Title VII of the Civil Rights Act of 1964 ("Plaintiff's Opposition"), at 8 (quoting deposition of Ivy J. Pinkney of December 11, 1993, at pp. 244–45). Pinkney argues that her deposition testimony alone is sufficient to establish a dispute of material fact which would be sufficient to survive summary judgment.[2] Second, Pinkney claims that Robinson never advised her of any termination decision until November 26, 1991, five days after the enactment of the 1991 Act. *Id.* at 9 (citing deposition of Ivy J. Pinkney of February 8, 1994, at pp. 63–67).

The plaintiff has, in fact, testified at a deposition that at least one sexually harassing act occurred in November, just before she left Robinson's employ. While the deposition testimony is often noteworthy for its

---

**2.** Pinkney has also attached a recent affidavit to her motion. *See* Plaintiff's Opposition, *supra,* at Ex. 1 (affidavit of Ivy J. Pinkney of December 12, 1995). The affidavit has not been notarized, but it was made under penalty of perjury. 28 U.S.C. § 1746 (1994); *see* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure: Civil 2d, § 2738, at 499–500 (1983). In contrast to her depositions taken approximately two years earlier in which she could not recall many details of the alleged

incidents of sexual harassment, Pinkney's affidavits reflect remarkable factual recall, including specific dates and details of incidents that occurred over four years ago. In resolving this motion for summary judgment, because the plaintiff has relied heavily, if not almost exclusively, upon the deposition testimony in her motion, *see* Plaintiff's Opposition, *supra,* at 6–13, and because the affidavit is unnecessary to resolve the pending motion, the Court has not considered it.

lack of specificity, on December 11, 1993, Pinkney did testify that, just before her employment terminated, Robinson touched her leg for several seconds while she was doing dictation in his office:

Q: (Mr. Watkins): What's the most offensive touching that Mr. Robinson engaged in while you were employed at D.C. Law School?

A: (Ms. Pinkney): I would say when he placed his hand on my leg.

Q: When he placed his hand what?

A: On my leg.

Q: This is a new event, Mrs. Pinkney.

A: I told you that I was not remembering. You asked me to think.

Q: There is another event that Mr. Robinson placed his hand on your leg, is that what you are saying?

A: Yes, I would say that.

Q: Tell me what that event was?

A: I would say in November just before I left.

Q: 1991?

A: 1991, when he did this.

      \*     \*     \*     \*     \*·     \*

Q: What happened?

A: While he was dictating he proceeded to stick his arm out and put his hand on my leg on I guess you would say the inner thigh.

      \*     \*     \*     \*     \*     \*

Q: How long did it remain there?

A: For about maybe a couple of seconds because I stood up.

Deposition of Ivy J. Pinkney of December 11, 1993, at pp. 243–44, 256 & 246.

To survive a motion for summary judgment, the nonmovant must designate specific facts to show that there is a genuine issue of trial. The role of the Court on a motion for summary judgment is not to weigh the evidence, but to determine whether genuine issues of material fact exist for trial. *Abraham v. Graphic Arts Int'l Union,* 660 F.2d 811, 814 (D.C.Cir.1981). To survive summary judgment, the nonmoving party must offer more than mere allegations. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510. However, if the material facts proffered by the nonmoving party are subject to diverse interpretations, summary judgment is not available. *Tao v. Freeh,* 27 F.3d 635, 638 (D.C.Cir.1994). Any doubts must be resolved in favor of the nonmoving party, *Abraham,* 660 F.2d at 815, and the nonmoving party is entitled to all justifiable inferences. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

In this case, the Court holds that the plaintiff has identified two genuine issues of material fact that preclude summary judgment. The first is the date that Pinkney was fired. The defendants are correct that what matters is when the decision was made and not when the effect of the decision was felt. *Delaware State College v. Ricks,* 449 U.S. 250, 257–58, 101 S.Ct. 498, 503–04, 66 L.Ed.2d 431 (1980). However, Pinkney disputes Robinson's claim that he made the decision on August 27, 1991. Pinkney claims that the decision was made on November 26, 1991, and she argues that the statements Robinson made to the contrary in his letter to Pinkney and to Ms. Buckingham–Reilly of the EEOC were pretextual.

Similarly, the parties dispute whether Robinson engaged in any acts of a sexual harassment on or after November 21, 1991. The plaintiff's sole basis for her allegation is her statement that Robinson touched her inner thigh "just before [she] left" Robinson's employment on November 21, 1991. The Court's role is not to weigh this evidence, but merely to determine whether a genuine dispute exists. And, in doing so, the plaintiff is entitled to all justifiable inferences. Because the phrase "just before I left" is subject to diverse interpretations, summary judgment is inappropriate. Moreover, resolving the factual impasses on both issues requires an assessment of both Pinkney and Robinson's credibility, partly through observing their demeanor while testifying. This makes it clear that resolving either issue by summary judgment would be inappropriate. *See Poller v. Columbia Broadcasting Sys., Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962). *E.g., Hackley v. Roudebush,* 520 F.2d 108, 159 n. 202 (D.C.Cir.1975); *Cunningham v. United Nat'l Bank of Washington,* 710 F.Supp. 861, 862 (D.D.C.1989); *Morgan v. District of Columbia,* 647 F.Supp. 694, 698 (D.D.C.1986).

At trial, the Court will have the discretion to allow the jury to hear evidence of pre–1991 Act conduct. *See, e.g., Davidson v. MAC Equipment, Inc.*, 878 F.Supp. 186, 189 (D.Kan.1995); *Douglas v. Coca Cola*, No. 94–97–L, 1994 U.S.Dist. LEXIS 18653 at *4 (D.N.H., Dec. 27, 1994). But, although the jury may be allowed to hear evidence of the pre–1991 Act conduct, it will only be allowed to determine Title VII liability with respect to the six-day period between November 21–26, 1991. Similarly, compensatory and punitive damages, if awarded, would be limited to that 6–day period. *See, e.g., Hatley v. Store Kraft Mfg. Co.*, 859 F.Supp. 1257, 1259–60 (D.Neb.1994).

B. *The Motion for Partial Summary Judgment on the Hostile Work Environment Claims Under Title IX and Title VII.*

The defendants have also moved for summary judgment on Pinkney's claims under Title IX of the Education Amendments of 1972 [3] and Title VII of the Civil Rights Act of 1964,[4] arguing that they are entitled to summary judgment on the hostile work environment claim (under both Title IX and Title VII) since "it is undisputed that defendants had no notice or reason to know of the allegations by plaintiff in sufficient time to take any steps to address plaintiff's claims prior to her departure from DCSL." Defendants' Motion for Partial Summary Judgment on Plaintiff's Hostile Work Environment Claim Brought Under Title IX of the Education Amendments of 1972 and Title VII of the Civil Rights Act of 1964 ("Defendants' Motion for Partial Summary Judgment on the Hostile Work Environment Claim"), at 9–10.

Relying upon Pinkney's admissions that she never notified the defendants of Robinson's alleged misconduct until months after she had left DCSL, the defendants argue that a finding of liability against either DCSL or the District of Columbia is precluded under both Title VII and Title IX. *Id.* at 10–11 (citing deposition of Ivy J. Pinkney of February 8, 1994, at p. 121). As authority for this proposition, the defendants offer *Meritor Savings Bank, F.S.B., v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), in which the Supreme Court rejected a rule holding employers strictly liable for the sexually harassing conduct of their employees. *Id.* at 72, 106 S.Ct. at 2408. The defendants admit, however, that the Supreme Court in *Meritor Savings Bank* also rejected the contention that an employer could escape liability "simply by claiming it lacked notice of the allegations." Defendants' Motion for Partial Summary Judgment on the Hostile Work Environment Claim, *supra*, at 11. Alternatively, the defendants argue that they are not liable under traditional agency principles, because Robinson's alleged misconduct was beyond the scope of his employment. *Id.* at 14 n. 4.

In opposition, Pinkney contends that an employer is liable under both Title IX and Title VII for the sexually harassing conduct of its supervisors. She implies that notice by the victim to the employer is not a prerequisite to liability under either statute. In arguing that the U.S. Court of Appeals for the District of Columbia has long held employers liable for the discriminatory acts of supervisor personnel under Title VII, Pinkney relies solely upon *Bundy v. Jackson*, 641 F.2d 934, 943 (D.C.Cir.1981). *See* Plaintiff's Opposition, *supra*, at 15. To support her Title IX argument, Pinkney also relies upon and quotes a First Circuit decision in which a court upheld a finding of liability in a sexual harassment case even though the employee failed to provide notice of her complaint: "an educational institution is liable upon a finding

---

**3.** In relevant part, Title IX, 20 U.S.C. § 1681(a), provides:

No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

**4.** In relevant part, Title VII, 42 U.S.C. § 2000e–2(a), provides:

It shall be an unlawful employment practice for an employer—(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex or national origin. . . .

of hostile environment sexual harassment perpetrated by its supervisors upon employees if an official representing that institution knew, or in the exercise of reasonable care, should have known, of the harassment's occurrence, unless that official can show that he or she took appropriate steps to stop it." *Id.* (quoting *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 901 (1st Cir.1988)). In sum, Pinkney argues that the defendants are liable under both Title VII and Title IX for Robinson's conduct based on traditional agency principles, because Robinson was a supervisor and used his authority to sexually harass her. *Id.* at 18.

■ As a threshold matter, this Court will look to Title VII principles to review the plaintiff's claim of Title IX liability. As the parties note in their briefs, neither the Supreme Court nor the U.S. Court of Appeals for the D.C. Circuit have directly addressed this question. However, other circuits have used Title VII to "defin[e] the contours ... of Title IX." *Murray v. New York University College of Dentistry,* 57 F.3d 243, 248 (2nd Cir.1995); *see also Preston v. Commonwealth of Virginia ex rel. New River Community College,* 31 F.3d 203, 206 (4th Cir. 1994); *Roberts v. Colorado State Board of Agriculture,* 998 F.2d 824, 832 (10th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 580, 126 L.Ed.2d 478 (1993); *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 896–98 (1st Cir. 1988); *Mabry v. State Bd. of Community Colleges & Occupational Educ.,* 813 F.2d 311, 316 (10th Cir.), *cert. denied,* 484 U.S. 849, 108 S.Ct. 148, 98 L.Ed.2d 104 (1987); *O'Connor v. Peru State College,* 781 F.2d 632, 642 n. 8 (8th Cir.1986). *Cf. Cohen v. Brown University,* 991 F.2d 888, 902 (1st Cir.1993) (declining to apply Title VII burden-of-proof rules; limiting *Lipsett* to employment context). *But see Franklin v. Gwinnett County Pub. Schools,* 911 F.2d 617, 622 (11th Cir.1990) (in alleged harassment of student by teacher, declining to apply Title VII to a Title IX school), *rev'd on other grounds,* 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992).

While the Supreme Court in *Franklin* did not reach the question whether Title VII principles control Title IX sexual harassment cases, 503 U.S. at 65 n. 4, 112 S.Ct. at 1032 n. 4, the Court did rely upon a Title VII case for its central proposition: "Unquestionably, Title IX placed on the [educational institution] the duty not to discriminate on the basis of sex, and when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor discriminate[s] on the basis of sex." *Franklin,* 503 U.S. at 75, 112 S.Ct. at 1037 (quoting *Meritor Savings Bank v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986) (internal quotations omitted)). Not only did the *Franklin* Court rely heavily upon *Meritor Savings Bank,* a Title VII case, but previously the Court had held Title IX's protections should "sweep as broad as its language." *North Haven Bd. of Educ. v. Bell,* 456 U.S. 512, 521, 102 S.Ct. 1912, 1918, 72 L.Ed.2d 299 (1982).

Even though the Supreme Court has not expressly reached the question whether the remedies under Title IX are equivalent to those of Title VII, both the legislative history underlying Title IX and the EEOC's employment discrimination guidelines lead this Court to conclude that, at least in the employment context, the same rules should apply to determine liability. The House Report indicates that when Title IX was crafted in 1972, Congress intended that it would be Title VII's analogue for employment-related discrimination at educational institutions. *See* H.R.Rep. No. 554, 92d Cong., 2d Sess. 51–52, *reprinted in* 1972 U.S.Code Cong. & Admin.News 2462, 2512. And, for employment-related claims, the Department of Justice has instructed federal agencies investigating or adjudicating discrimination cases to "consider Title VII case law and EEOC Guidelines ... in determining whether a [Title IX institution] has engaged in an unlawful employment practice." 28 C.F.R. § 42.604 (1995). In its landmark decision on sexual harassment, the Supreme Court accorded great weight and relied heavily upon the EEOC's guidelines on sexual harassment. *See Meritor Savings Bank,* 477 U.S. at 66–72, 106 S.Ct. at 2404–08; *see also Vinson v. Taylor,* 753 F.2d 141 (D.C.Cir.1985) (D.C. Circuit also "attach[es] considerable weight to [EEOC's] interpretation"). The Department of Justice's determination that EEOC guidelines should be applied to investigate allegations of discrimination under Title IX

are entitled to similar deference, *see Chevron, U.S.A., Inc., v. Natural Resources Defense Council,* 467 U.S. 837, 844, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984), and the EEOC's guidelines are equally persuasive in the context of employment-related sexual harassment under Title IX.

■ Having determined that the plaintiff's claims under Title VII and Title IX will be analyzed similarly, the question presented is whether summary judgment is an appropriate vehicle in which to excuse the defendants from liability for Robinson's alleged conduct. The defendants argue that judgment as a matter of law in their favor is appropriate, because they lacked actual or constructive notice of Pinkney's allegations, *see* Defendants' Motion for Partial Summary Judgment on the Hostile Work Environment Claim, *supra,* at 9–10 & 13, and because traditional agency principles should not be applied woodenly: "Therefore, in the absence of any definitive guidance from the Supreme Court on this issue, this Court should not simply apply traditional agency principles to determine whether an employer is liable for the acts of its employees in creating a hostile work environment under Title IX." *Id.* at 13.

In opposition, the D.C. Circuit case upon which the plaintiff primarily relies is *Bundy v. Jackson,* 641 F.2d 934 (D.C.Cir.1981). The plaintiff suggests that *Bundy* established a rule of strict liability. However, the rule cannot be stated so simply. In *Bundy,* while the D.C. Circuit held that an employer is liable for the discriminatory acts of its supervisory personnel, the Court of Appeals recognized that Title VII liability is not without some limits. *Id.* at 943. Citing *Barnes v. Costle,* 561 F.2d 983, 993 (D.C.Cir.1977), the *Bundy* Court noted: "*Barnes* did suggest that the employer might be relieved of liability if the supervisor committing the harassment did so in contravention of the employer's policy and without the employer's knowledge, and if the employer moved promptly and effectively to rectify the offense." *Bundy,* 641 F.2d at 943.

Later, in *Vinson v. Taylor,* 753 F.2d 141 (D.C.Cir.1985), the D.C. Circuit did adopt a rule that employers are strictly liable for the sexual harassment of their supervisors: "To-

day ... we are confronted by the question that was not directly and actively litigated in *Barnes* or *Bundy*: Whether Title VII imposes upon an employer without specific notice of sexual harassment by supervisory personnel responsibility for that species of discrimination. We hold that it does." *Id.* at 147. The D.C. Circuit had "no difficulty in concluding that an employer may be held accountable for discrimination accomplished through sexual harassment by any supervisory personnel with authority to hire, to promote or to fire." *Id.* at 149–50. *See also McKinney v. Dole,* 765 F.2d 1129, 1139 n. 22 (D.C.Cir.1985).

While affirming the judgment in *Vinson,* the Supreme Court expressly rejected the rule of strict liability under a hostile work environment. *Meritor Savings Bank,* 477 U.S. at 73, 106 S.Ct. at 2408, *aff'g on other grounds, Vinson v. Taylor,* 753 F.2d 141 (D.C.Cir.1985). The Court held that "[a]s to employer liability, we conclude that the Court of Appeals was wrong to entirely disregard agency principles and impose absolute liability on employers for the acts of their supervisors, regardless of the circumstances of a particular case." *Id.,* 477 U.S. at 73, 106 S.Ct. at 2408. Instead, the Court directed the use of agency principles for guidance in determining Title VII liability, keeping in mind that "such common law principles may not be transferable in all their particulars to Title VII." *Id.* at 72, 106 S.Ct. at 2408. While the Court rejected strict liability, it also rejected the suggestion that lack of notice would, by itself, insulate an employer from liability. *Id.,* at 71–73, 106 S.Ct. at 2408. Significantly, the Court held that an employer is not excused from liability as a result of the "mere existence of a grievance procedure and a policy against discrimination, coupled with [the victim's] failure to invoke that procedure." *Id.,* at 72, 106 S.Ct. at 2408.

If the inapplicability of a rule of strict liability in Title VII hostile environment cases was not made clear enough by the Supreme Court in *Meritor Savings Bank,* the Court of Appeals has certainly done so in the recent case of *Gary v. Long,* 59 F.3d 1391 (D.C.Cir.1995). Like Pinkney here, Coramae Gary failed to notify her employer, the Wash-

ington Metropolitan Area Transit Authority ("WMATA"), that she was being sexually harassed by her supervisor while the harassment was ongoing. *Gary*, 59 F.3d at 1394. Among other things, Gary alleged that supervisor Long harassed her with language of a sexual nature, fondled her body and threatened her with termination if she told anyone of his sexual advances. Ultimately, he drove her to a WMATA worksite under the pretext of conducting an inspection and, once there, raped her. *Id.* Only after the alleged rape did Gary notify WMATA, which investigated but was unable to corroborate her complaint. *Id.*

In upholding the dismissal of Gary's hostile environment claim against WMATA, the Court of Appeals added some gloss to the Supreme Court's command in *Meritor Savings Bank* to rely upon agency principles in determining employer liability in sexual harassment hostile environment cases. The *Gary* Court confirmed that where a supervisor wields his or her power as a supervisor, power which arises from the existence of the agency relation, employer liability is appropriate even if the employer lacked actual or constructive knowledge of the harassment. *Id.* at 1397 (citing Restatement (Second) of Agency ("Restatement") § 219(2)(d)).[5] However, the Court of Appeals imposed limits on the reach of this provision. *Id.* Under *Gary*, in assessing an employer's liability for sexual harassment in hostile work environment cases, the district courts in this Circuit are to consider whether the employer has "taken energetic measures to discourage sexual harassment in the workplace and has established, advertised and enforced effective procedures to deal with it when it does occur." *Id.* at 1398. The viability of this defense depends, at least in part, "on the ability of the employer to establish that its employees could not reasonably have failed to know

of those measures." *Id.* Therefore, for an employer to avoid liability for its supervisor's sexual harassment creating a hostile work environment, an employer must not only show that it lacked actual or constructive knowledge of the harassment, but the employer must demonstrate that it had an effective and responsive system ("energetic measures") in place at the time of the alleged harassment and that this system was one of which the victim knew or should have known and which he or she could have relied upon for a prompt and effective remedy.

This Court's review of the defendants' motion for partial summary judgment on the hostile work environment claims has been based on *Gary*, which makes clear that resolving the question of defendants' liability on summary judgment is inappropriate in this case. There is no evidence before the Court to show that the defendants had taken energetic measures to discourage sexual harassment through a responsive system that offered Pinkney and prompt redress for her claim. Nor is there any evidence before the Court that would satisfy the defendants' evidentiary obligation "to establish that its employees could not reasonably have failed to know of those measures." *Gary*, 59 F.3d at 1398.[6] Consequently, these questions raise genuine issues of material fact which preclude summary judgment.

### III. Conclusion

Accordingly, for the reasons stated above, it is

ORDERED that Defendants' Motion for Partial Summary Judgment on Plaintiff's Claim Brought Under the Civil Rights Act of 1991 is denied; and it is

FURTHER ORDERED that Defendants' Motion for Partial Summary Judgment on Plaintiff's Hostile Work Environment Claim

---

**5.** Federal courts have held employers strictly liable in *quid pro quo* sexual harassment cases under Title VII. *See* Schlei & Grossman, Employment Discrimination Law 148 & n. 184 (2nd ed. 1989, Five-Year Cumulative Supp.) (citing cases). Gary's *quid pro quo* claim was dismissed because the court construed Long's conduct as mere "saber rattling," *Gary*, 59 F.3d at 1396, without "adverse job consequences." *Id.* Since the defendants exclude Pinkney's *quid pro quo* claim from the scope of their motions, the Court

does not reach the issue of whether strict liability in *quid pro quo* cases survived *Gary*.

**6.** Although the Court has not considered the defendants' untimely reply, *see supra* note 1, even if the Court had, summary judgment would be denied. In its reply, the defendants have merely offered the existence of a D.C. code provision, which prohibits sexual harassment, as the employer's "energetic measure" under *Gary*. Existence of such a statute or policy, alone, does not provide a victim of sexual harassment with the

Brought Under Title IX of the Education Amendments of 1972 and Title VII of the Civil Rights Act of 1964 is denied.

IT IS SO ORDERED.

guarantee of a responsive, effective system to remedy complaints of discrimination. Nor does the mere existence of a statutory provision, such as Title VII itself or the D.C. Code, indicate that the plaintiff knew or should have known of an employer's "energetic measures" to implement the law. Moreover, the Supreme Court has cautioned that the mere existence of a procedure, even where coupled with the victim's failure to take advantage of the procedure, is insufficient to excuse an employer from liability arising as a result of a supervisor's sexually harassing conduct. *Meritor Savings Bank*, 477 U.S. at 72, 106 S.Ct. at 2408.