Lori R. STILLEY, and Robert Stilley, her husband, Plaintiffs,

v.

UNIVERSITY OF PITTSBURGH OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION, d/b/a The University of Pittsburgh, and Anthony R. Petrosky, Individually and in his Capacity as an Employer, Defendants.

Civil Action No. 95–0474.

United States District Court, W.D. Pennsylvania.

Dec. 24, 1996.

Thomas E. Crenney, Mark B. Morrow, Thomas E. Crenney & Associates, Pittsburgh, PA, for Plaintiffs.

John G. Greeno, University of Pittsburgh, PA, for Univ. of Pitts. of Com. Sys. of Higher Educ.

Sheila M. Ford, Ford & Council, Pittsburgh, PA, John G. Greeno, University of Pittsburgh, PA, for Anthony R. Petrosky.

## MEMORANDUM OPINION

LEE, District Judge.

Before the Court are the following motions: **University of Pittsburgh of the Commonwealth System of Higher Education, d/b/a The University of Pittsburgh's Motion for Summary Judgment** (Document No. 24) and **Anthony R. Petrosky's Motion for Summary Judgment** (Document No. 26). After careful consideration of defendants' motions, the extensive supporting material in support of and in opposition thereto, the memoranda in support of and in opposition thereto, the relevant case law, and the record as a whole, the Court will grant, in part, and deny, in part, defendants' motions.

Defendant University of Pittsburgh's motion for summary judgment will be granted with respect to plaintiffs' claims for assault and battery, and those claims brought under 42 U.S.C. §§ 1983 and 2000e. Defendant University's summary judgment motion will be denied in all other respects.

Defendant Petrosky's motion for summary judgment will be granted with respect to plaintiffs' claims for assault and battery, and plaintiffs' claim brought under Title 42 U.S.C. § 2000e. Defendant Petrosky's summary judgment motion will be denied in all other respects.

## I. BACKGROUND

### A. *The Parties*

Plaintiffs, Lori R. Stilley and Robert Stilley, filed their lawsuit on March 14, 1995, in the Court of Common Pleas of Allegheny County, Pennsylvania. At all relevant times, plaintiff Lori Stilley was, and continues to be, a doctoral candidate at Defendant, University of Pittsburgh of the Commonwealth System of Higher Education, d/b/a University of Pittsburgh (the "University"), in the Department of Instruction and Learning within the School of Education. She has completed her doctoral courses and is working on her dissertation. Additionally, from March, 1990, until August, 1993, and again from February through April, 1994, Ms. Stilley was em-

ployed by the University through the School of Education.

Defendant University is an educational institution organized under the laws of the Commonwealth of Pennsylvania. Plaintiffs allege that, at all times pertinent to this lawsuit, Ms. Stilley was a student and employee of the University.

Defendant Anthony R. Petrosky ("Petrosky") is a full tenured professor at the School of Education at the University, with a joint appointment in the Departments of Curriculum and Instruction and English. Plaintiffs allege that Petrosky was acting as the agent, servant and/or employee of the University and, further, that he was also the employer of Lori Stilley.

## B. *The Complaint*

On March 13, 1995, plaintiffs filed an eight-count Complaint in Civil Action in the Court of Common Pleas of Allegheny County, Pennsylvania. The gravamen of the complaint is that Petrosky, in his concurrent roles of supervisor, academic advisor and chairman of her dissertation committee, sexually harassed and discriminated against Ms. Stilley, while she was a student and employee of the University, and that the University knew or should have known about this harassment and acquiesced and tacitly condoned Petrosky's behavior, harassment and discrimination.

In Count I, plaintiff Lori Stilley alleges that the conduct of defendants constitutes assault and battery under the laws of the Commonwealth of Pennsylvania. Count II alleges that because of defendants' conduct, plaintiff Lori Stilley has suffered intentional and/or negligent infliction of emotional distress under the laws of the Commonwealth of Pennsylvania. In Count III, Plaintiff Robert Stilley contends that as a direct and proximate result of the conduct of defendants he has suffered the "loss of consortium, care, affection, support, [and] protection . . ." of his wife.

Plaintiff, Lori Stilley, sues Petrosky individually and as her employer pursuant to 42 U.S.C. § 2000e–2(a)(1) and 42 U.S.C. § 1983 in Counts IV and VI of the Complaint, respectively. The University is sued as plaintiff Lori Stilley's employer pursuant to 42 U.S.C. § 2000e–2(a)(1) and 42 U.S.C. § 1983 in Counts V and VII of the Complaint, respectively.

Lastly, in Count VIII of the Complaint, the University is sued by Plaintiff Lori Stilley for violations of 20 U.S.C. § 1681, *et seq.*, commonly referred to as Title IX. The basis for plaintiff's claims against the University, is that Petrosky, while acting as plaintiff's academic advisor, supervisor, and chair of her dissertation committee, sexually harassed her.

## C. *Procedural History*

On March 28, 1995, defendants removed this matter, without objection, to the United States District Court for the Western District of Pennsylvania. Defendants have filed separate motions for summary judgment, with briefs in support thereof, along with statements of undisputed material facts with accompanying appendices. The University presents four grounds in support of its arguments that summary judgment should be granted in its favor: (i) plaintiffs have failed to adduce facts of quid pro quo sexual harassment; (ii) plaintiff's hostile environment sexual harassment claims are time barred; (iii) plaintiff's hostile environment claims against the University fail because plaintiff could not have reasonably believed that Petrosky had authority to act inappropriately; and (iv) plaintiffs' tort claims against the University should be dismissed for lack of respondeat superior liability.

Similarly, Petrosky presents four grounds in support of his arguments that summary judgment should be granted in his favor: (i) plaintiff's claims for assault and battery are barred by the applicable statute of limitations; (ii) plaintiff's claims for intentional infliction of emotional distress are not actionable; (iii) Petrosky was not plaintiff's employer and, therefore, he is not liable under Title VII; and (iv) that plaintiff's claims brought pursuant to 42 U.S.C. § 1983 are barred by the applicable statute of limitations.

## D. *The Allegations*

This case has its genesis in a relationship between Lori Stilley and a University professor, Anthony R. Petrosky, the exact nature of which is in some dispute. What is known is that Lori Stilley (nee Rittenhouse) matriculated graduate school at the University in its Department of Instruction and Learning, School of Education, in the Fall of 1989. At the suggestion of the chairman of the department, Professor Stephen Koziol, Lori Stilley first met Petrosky in January, 1990, and decided to work with him in applying for a grant for a major research project known as the Assessment Development Laboratory or "ADL" Project. After the grant was awarded, plaintiff was hired to work on the ADL project as a researcher. During her employment on the ADL Project, Lori Stilley attended numerous meetings with Petrosky and traveled with him.

Also, while working on the ADL Project, Lori Stilley began writing her dissertation, utilizing, with permission from Petrosky, data from the ADL Project. During the Spring of 1990, Ms. Stilley decided to change her advisors, from Professor Ogle Duff to Petrosky. From the Spring of 1990 until April 1994, Petrosky served as plaintiff's academic advisor and chair of her dissertation committee.

In October 1992, plaintiff was found to have manipulated the data for her dissertation study. While the record discloses that some members of her Dissertation Committee believed plaintiff should be severely reprimanded,[1] the Committee, including Petrosky, decided to allow plaintiff the opportunity to complete her dissertation. At that time, plaintiff opted to resume with her original topic; however, in late summer or early fall of 1993, Plaintiff elected to begin a different dissertation topic, with Koziol serving as the chairperson of this committee.

Funding for the ADL Project expired in August, 1993, and the employment of all persons working on the Project was terminated. In September, 1993, however, additional funding was secured by the University and a short-term addition to the Project commenced. Initially, Ms. Stilley was not continued on this additional work, but in February 1994, Petrosky hired her to work on the ADL extension as a consultant.

Plaintiffs moved to Harrisburg, Pennsylvania, in October, 1993. The majority of her work as an independent contractor on the ADL extension was completed from her home in Harrisburg. Accordingly, during her employment as an independent contractor, Ms. Stilley had very little, if any, contact with Petrosky.

Plaintiffs allege that Lori Stilley was subjected to unwelcome acts of verbal and physical sexual harassment and sexual discrimination, both as a student and employee, by Petrosky during the period from January, 1990 through May, 1994. As time progressed, according to plaintiffs, the abuse greatly accelerated both in terms of frequency and in terms of intrusiveness. In addition to an increase in sexual harassment and sexual discrimination by Petrosky, plaintiffs contend that in retaliation for her rejection of his advances, Petrosky began to engage in retaliatory conduct towards her. For example, according to plaintiffs, Petrosky imposed unfair and improper requirements for Ms. Stilley's first dissertation overview and actually sabotaged her second dissertation overview.

Plaintiffs contend that the effect of Petrosky's harassment continues as Lori Stilley has been excluded from writing a text book about the ADL Project, such exclusion clearly being in retaliation for her rejection of Petrosky's advances.

Plaintiffs allege that the University knew or should have known of Petrosky's harassment as she complained to "at least three of her supervisors."[2] Plaintiffs' Brief, at 3.

---

**1.** Professor Gaea Leinhardt testified in her deposition that she thought the consequence for altering the data required dismissal from the University. App. to Statement of Undisputed Material Facts of the University, Exh. 6, Depo. of Gaea Leinhardt, p. 57.

**2.** The record shows that plaintiff Lori Stilley complained to the following supervisors about Petrosky's conduct: Sharon Coben (see deposition of Sharon Coben, p. 70); Maria Almasy (see deposition of Maria Almasy, p. 35); and Steven Koziol (see deposition of Lori Stilley, Vol. I, p. 157).

While plaintiffs admit that the University had a policy prohibiting sexual harassment, plaintiffs contend that the policy was ineffective to combat sexual harassment.

## II. STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure reads, in pertinent part, as follows:

> [Summary Judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In interpreting Rule 56(c), the United States Supreme Court has stated:

> The plain language ... mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

An issue of material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court must view the facts in a light most favorable to the non-moving party and the burden of establishing that no genuine issue of material fact exists rests with the movant. *Id.* at 242, 106 S.Ct. at 2506–07. The "existence of disputed issues of material fact should be ascertained by resolving 'all inferences, doubts and issues of credibility against the moving party.'" *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir.1978) (quoting *Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir.1972)). Final credibility determinations

on material issues cannot be made in the context of a motion for summary judgment, nor can the district court weigh the evidence. *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632 (3d Cir.1993); *Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co.*, 998 F.2d 1224 (3d Cir.1993).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing'— that is, pointing out to the District Court— that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554. If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *Petruzzi's IGA Supermarkets*, 998 F.2d at 1230. When the non-moving party's evidence in opposition to a properly supported motion for summary judgment is "merely colorable" or "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

"One of the most common forms of evidence used on a summary judgment motion is affidavits ... in support of or opposition to a Rule 56 motion...." Wright, Miller & Kane, 10A Federal Practice and Procedure, § 2722, at 54. Hearsay evidence contained in affidavits and deposition testimony may be sufficient to survive summary judgment motion unless such evidence clearly would not be admissible at trial. *Clark v. Commonwealth of Pennsylvania*, 885 F.Supp. 694, 709 n. 3 (E.D.Pa.1995) (*citing Petruzzi's IGA Supermarkets*, 998 F.2d at 1234 n. 9).

## III. DISCUSSION

### A. *Count I—Assault and Battery*

Both defendants have moved for summary judgment on plaintiff Lori Stilley's claims for assault and battery. The University argues that these claims fail as Petrosky's actions

could not have been committed by him in the scope of his authority as an employee of the University. Alternatively, the University contends that if Petrosky's conduct does fall within the scope of his employment, then plaintiff's claims are barred by the exclusive remedy provisions of the Pennsylvania Workers' Compensation Act.

■ Defendant Petrosky argues that plaintiff's claims should be dismissed as they are barred by the applicable statute of limitations.[3] The record reflects that plaintiffs have not responded to any of the arguments presented by defendants on this issue.

■ Because the instant case arose within the Commonwealth of Pennsylvania, the Court must apply the applicable Pennsylvania law and statute of limitations to the state law claims raised in plaintiffs' Complaint. Under common law, any offensive contact, however minor, constitutes a battery. *Kedra v. City of Philadelphia*, 454 F.Supp. 652, 672 (E.D.Pa.1978); see also Restatement (Second) of Torts, §§ 13–20 (1965). "Under Pennsylvania law, an assault occurs when one acts with the unprivileged intent to put another in reasonable and immediate apprehension of a harmful or offensive conduct and which does cause apprehension." *Proudfoot v. Williams*, 803 F.Supp. 1048, 1054 (E.D.Pa.1992) (citing *Cucinotti v. Ortmann*, 399 Pa. 26, 159 A.2d 216, 217 (1960)).

■ In Pennsylvania, an action for assault and battery must be commenced within two years of knowledge of injury. 42 Pa.C.S.A. § 5524(1). The statute of limitations begins to run when a plaintiff knows or reasonably should know that he or she has been injured and that the injuries were caused by the other party. *Resolution Trust Corp. v. Farmer*, 865 F.Supp. 1143, 1150 (E.D.Pa. 1994).

The record describes numerous incidents of non-consensual touching by Petrosky during the period from 1990 through September 1992. However, the record is devoid of any references to incidents where Plaintiff experienced reasonable apprehension of non-consensual touching and/or actual touchings by Petrosky after September 1992. Plaintiff did not file the instant action until March 13, 1995; more than two years following the last incident of any alleged assault or battery. Therefore, plaintiff's claims for assault and battery are untimely and barred by 42 Pa. C.S. § 5524(1). Accordingly, defendants' motions for summary judgment as to Count One will be granted.

B. *Count II—Intentional and/or Negligent Infliction of Emotional Distress*

1. *The University's Motion*

■ Identical to its arguments pertaining to plaintiff's claims for assault and battery, the University contends that the claims for intentional and/or negligent infliction of emotional distress fail as Petrosky's actions could not have been committed by him in the scope of his authority as an employee of the University. Alternatively, the University contends that if Petrosky's conduct does fall within the scope of his employment, then plaintiff's claims are preempted by the Pennsylvania Workers' Compensation Act.[4]

However, plaintiff contends that a claim for intentional infliction of emotional distress can be maintained for claims of sexual harassment in the work place pursuant to the decision of the Pennsylvania Superior Court in *Schweitzer v. Rockwell Int'l*, 402 Pa.Super. 34, 586 A.2d 383 (1990). In further support of her contention, plaintiff relies on a published Memorandum Opinion issued by Gary L. Lancaster, District Judge, United States District Court for the Western District of Penn-

---

**3.** An Answer with Affirmative Defenses was filed on behalf of both defendants on April 4, 1995. In their Answer, defendants contend that "plaintiffs' claims are barred by the applicable statute of limitations." Defendants' Answer, § 154, at 24.

**4.** The Court notes that plaintiff's claims for intentional and/or negligent infliction of emotional distress arise from her association with the University both as an employee and a student. Therefore, assuming that the exclusive remedy provisions of the Pennsylvania Workers' Compensation Act applies, it would bar plaintiff's claims only as they relate to the sexual harassment of an employee, not as they relate to the sexual harassment of a student.

sylvania in *Barb v. Miles,* 861 F.Supp. 356 (W.D.Pa.1994).

The Court has thoroughly reviewed the opinions in *Schweitzer* and *Barb* and can find no distinguishable characteristics that would mandate a finding inconsistent with those holdings. Therefore, the Court will adopt the reasonings of *Schweitzer* and *Barb* and will permit plaintiff to present this claim to jury. Accordingly, the University's motion for summary judgment as to Count Two will be denied.

### 2. *Petrosky's Motion*

■ Petrosky argues that plaintiff has failed to make out a sufficient claim for intentional and/or negligent infliction of emotional distress as none of Petrosky's alleged actions rise to the necessary level of "outrageousness."

■ Under Pennsylvania law, a claim of intentional infliction of emotional distress requires a showing of "extreme or clearly outrageous" conduct. *Andrews v. City of Philadelphia,* 895 F.2d 1469, 1486–87 (3d Cir.1990) (citing *Cox v. Keystone Carbon,* 861 F.2d 390, 395 (3d Cir.1988)). The "conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *Hurst v. Beck,* 771 F.Supp. 118, 121 n. 5 (E.D.Pa.1991) (citing *Buczek v. First Nat'l Bank of Mifflintown,* 366 Pa.Super. 551, 531 A.2d 1122, 1125 (1987)).

The Court of Appeals for the Third Circuit has opined:

> [A]s a general rule, sexual harassment alone does not rise to the level of outrageousness necessary to make out a cause of action for intentional infliction of emotional distress.... As we noted in *Cox v. Keystone,* 861 F.2d 390, 395–96 (3d Cir. 1988), "the only instances in which courts applying Pennsylvania law have found conduct outrageous in the employment context

is where an employer engaged in both sexual harassment and other retaliatory behavior against an employee." *The extra factor that is generally required is retaliation for turning down sexual propositions.*

*Andrews,* 895 F.2d at 1487 (emphasis added).

In the instant case, plaintiff not only alleges that Petrosky made suggestive innuendoes and touched her inappropriately on a number of occasions, but that he continues to retaliate against her for declining his advances. The Court is satisfied that a jury acting reasonably could find such conduct is "outrageous in character" and sufficiently establishes this claim. Accordingly, Petrosky's motion for summary judgment as to Count Two will be denied.

### C. *Count III—Loss of Consortium*

The claims of Plaintiff Robert Stilley for loss of consortium are derivative from the claims of his wife, Plaintiff Lori Stilley. *See Rodgers v. Prudential Ins. Co. of America,* 803 F.Supp. 1024 (M.D.Pa.1992), *aff'd,* 998 F.2d 1004 (3d Cir.1993). To the extent that Plaintiff Lori Stilley's state law claims have survived summary judgment, so must Robert Stilley's claims for loss of consortium survive summary judgment. Therefore, Defendant University's request to dismiss Count III of the Complaint will be denied.

### D. *Count IV—42 U.S.C. § 2000e—against Petrosky*

■ In Count IV of the Complaint, plaintiff Lori Stilley seeks to hold Petrosky personally liable for damages under Title VII for alleged sexual harassment because he was acting as an "agent" of the University and was also the "employer"[5] of plaintiff Lori Stilley. Petrosky argues that this claim must be dismissed because Petrosky was not Lori Stilley's employer, but rather he was an individual employee of the University and an individual employee cannot be held liable un-

---

5. In Paragraph 5 of their Complaint, plaintiffs allege that:

At all times material hereto, Defendant Petrosky was acting as an **agent,** servant, and/or employee of Defendant Pitt, and under color of law in the performance of a public function

with the substantial assistance of public funds and grants, and pursuant to the authority of, and relationship, with, the Commonwealth of Pennsylvania. At all times pertinent hereto **Defendant Petrosky was also the employer of Plaintiff Lori Stilley.** (emphasis added).

der Title VII. The record indicates that plaintiffs have not responded to Petrosky's arguments on this issue.

While plaintiffs allege that Petrosky was Ms. Stilley's "employer" they have failed to produce any evidence to support their contention. In fact, the record reflects that it was the University, not Petrosky, who received the ADL Project grant and that Petrosky was the principal investigator and co-director of the ADL Project. Moreover, in his deposition, Petrosky testified that he had been "employed by the University" since 1976. App. in Support of Mot. for Summ. Judg., Exh. C, Depo. of Anthony R. Petrosky, at 10. Accordingly, the Court finds that Petrosky was not the employer of Lori Stilley, but rather the University was the employer and Petrosky was the co-director and principal investigator on the ADL Project.

The issue of individual liability under Title VII has recently been decided by the Court of Appeals for the Third Circuit. *See Sheridan v. E.I. DuPont de Nemours and Co.,* 100 F.3d 1061 (3d Cir.1996). The Court of Appeals specifically stated that "Congress did not intend to hold individual employees liable under Title VII." *Id.* at 1078. Accordingly, following precedent established by the Court of Appeals for the Third Circuit, Petrosky's motion for summary judgment as to Count IV of the Complaint will be granted.

E. *Count V—42 U.S.C. § 2000e against the University*

■ In Count V of the Complaint, plaintiff Lori Stilley alleges that the University has "engaged in a policy, practice and/or custom of non-objective criteria for termination and/or advancement in employment and has permitted sexual harassment and/or discrimination to be the basis of or the denial of employment...." Complaint at ¶ 74. Plaintiff further alleges that the University knew of the violations through notice and the observations of its supervisors and managers and either acquiesced or facilitated the harassment.

Moreover, in addition to being terminated from her employment, Plaintiff Lori Stilley alleges that she has been denied further benefits of that employment including: "(a) denial of professional credit for work on the project in her capacity as a research associate; (b) denial of the opportunity to use her work on the project to satisfy her dissertation requirement; (c) denial of the opportunity to benefit from publishing her work on the project in her capacity as research associate; and (d) Plaintiff was forced to start over on her dissertation, and change the subject of her dissertation." Complaint at ¶ 89.

At the onset, the Court notes that the analysis of this case is complicated by the multiple roles and interactions between Plaintiff Lori Stilley and Defendant Petrosky, i.e., student-academic advisor/professor/dissertation committee chair and employee-supervisor. While recognizing that plaintiff's work on her dissertations is closely related to her work on the ADL Project, the Title VII inquiry must focus only on the employee-employer relationship. Therefore, this Court must determine whether plaintiff has produced sufficient evidence to create a genuine issue of material fact as to whether her employer, the University, intentionally discriminated against her. *See Pollock v. American Telephone & Telegraph Long Lines,* 794 F.2d 860, 864 (3d Cir.1986). All issues pertaining to the completion of plaintiff's dissertation relate to plaintiff's role as a student and not as an employee. Accordingly, any allegations of "quid pro quo retaliation" regarding plaintiff's dissertation are not proper for a Title VII claim and will not be considered by the Court in its Title VII analysis.

Section 703 of Title VII provides, in pertinent part, that it is an "unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex...." 42 U.S.C. § 2000e–2(a)(1). Courts have recognized two types of sexual discrimination. The first, "quid pro quo" harassment, covers the loss of tangible economic benefits to the employee who rejects his or her employer's sexual demands. *See* 19 C.F.R. § 1604.11(a). The second, "hostile work environment" harassment, occurs when sexual conduct or materi-

als exist in the workplace that create an abusive environment which affects the employee's psychological well-being. *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

Plaintiffs' complaint does not delineate the nature of the sexual discrimination claims, although their brief in opposition to defendants' motions for summary judgment does state that there is ample evidence in the record to support a finding of liability against the University on both a claim of quid pro quo retaliation [6] and hostile work environment.

The record reflects that plaintiff Lori Stilley was an employee of the University on two separate occasions—(1) from March 1990 until August 1993 when she worked on the ADL Project first as a student researcher and then was promoted to research associate; and (2) for an approximate two month period, from February, 1994 to late-April, 1994, when she was hired to work on the ADL Project as a consultant.

### A. *Statute of Limitations*

For statute of limitations purposes, a charge of discrimination must be filed with the EEOC within 300 days of the alleged discrimination. Plaintiff did not file her charges until on or after October 17, 1994 (see Ex. 28 to Doc. 38, App. to Plaintiff's Brief and Counterstatement of Undisputed Facts); Defendant argues, therefore, that any alleged discriminatory incidents occurring prior to December 22, 1993 are barred because they are untimely.

▆▆▆ Plaintiff responds that because she is proceeding on a "continuing violations theory," she can recover for discriminatory conduct that occurred outside the limitations period, if she can show that the conduct is a part of an ongoing practice or pattern of discrimination.

The continuing violations theory allows a plaintiff to pursue a Title VII claim for discriminatory conduct which began outside the limitations period if she can demonstrate that the conduct alleged is part of an on-going practice or pattern of discrimination effected by the employer. *Bronze Shields, Inc. v. New Jersey Dept. of Civil Serv.,* 667 F.2d 1074, 1080–84 (3d Cir.1981), *cert. denied,* 458 U.S. 1122, 102 S.Ct. 3510, 73 L.Ed.2d 1384 (1982). When relying on this theory, the plaintiff must prove that a violation occurred within the limitations period and that such violation is "reasonably related" to prior discriminatory acts alleged. *Jewett v. International Telephone and Telegraph Corp.,* 653 F.2d 89, 91–93 (3d Cir.1981), *cert. denied,* 454 U.S. 969, 102 S.Ct. 515, 70 L.Ed.2d 386 (1981).

#### 1. *Hostile Environment Sexual Harassment Claim*

To bring a successful hostile environment harassment claim, plaintiff must show: (1) she suffered intentional discrimination because of her sex; (2) the discrimination was pervasive and regular; (3) the discrimination detrimentally affected her; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability. *Andrews v. Philadelphia,* 895 F.2d 1469, 1482 (3d Cir.1990).

The following is uncontested: (1) Plaintiff's first employment ended with the University in late, August 1993 after the main grant on the ADL Project expired; and (2) in February, 1994, plaintiff was rehired by Petrosky as a consultant to work on the ADL Project. Again, in order to rely on the continuing violations theory, plaintiff must show that a violation occurred within the limitations peri-

---

**6.** The employment discrimination claim in this case is brought under section 703 of Title VII. The Court notes that a claim for retaliatory action brought under section 703 is quite different from a discrimination claim brought under section 704(a) of Title VII. Section 704 claims generally arise "post-employment when an employee who has been terminated files an action under Title VII charging discrimination in discharge only to meet continued harassment from his or her employers in retaliation for the filing of the action." *Charlton v. Paramus Board of Education,* 25 F.3d 194, 197 (3d Cir.1994).

Plaintiff in this case is not alleging retaliation for the filing of her EEOC claim, but rather that Petrosky has retaliated by sabotaging her academic and professional career because of plaintiff's rejection of his sexual advances.

od and that such violation is reasonably related to prior discriminatory acts. *Jewett,* 653 F.2d at 91–93.

Since moving to Harrisburg in October, 1993, plaintiff had practically no contact with Petrosky or anyone else in Pittsburgh. In fact, plaintiff's own deposition testimony reveals that after February, 1994, her interactions with Petrosky "were minimal" as she did most of the consulting work in Harrisburg. Appendix in Support of Defendant Petrosky's Motion for Summary, Exhibit B, Deposition of Lori R. Stilley, February 5, 1996 at p. 68. Furthermore, the only alleged "objectionable" conduct by Petrosky during the limitations period, was during a phone call when Petrosky allegedly said to Ms. Stilley: "I need you; . . . I'm counting on you to do this work . . . ." *Id.*

The Court of Appeals for the Third Circuit has instructed that "isolated or sporadic incidents of discrimination, even if intentional, are not sufficient to establish the requisite pattern" necessary to prove a continuing violations theory. *Jewett,* 653 F.2d at 91. After considering the facts of record, and giving plaintiff the benefit of all reasonable inferences, the Court finds that plaintiff has not shown that during the limitations period she was harassed or subjected to an abnormal working environment.

Accordingly, not being able to rely on the continuing violations theory, plaintiff's Title VII claims of hostile environment are untimely and barred by 42 U.S.C. § 2000e–5(e).

### B. *Quid Pro Quo Sexual Harassment claims*

■■■ To prevail under the quid pro quo harassment theory, plaintiff's claim must meet a five-part test: (1) she was a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) submission to the unwelcome advances was an express or implied condition for receiving job benefits or that refusal to submit to the supervisor's sexual demands resulted in a tangible job detriment; and (5) respon-

deat superior liability exists. *Egli v. Stevens,* 1993 WL 153141 (E.D.Pa.1993), *aff'd without opinion,* 17 F.3d 1429 (3d Cir.1994).

■■■ Although unclear from the Complaint, based on Plaintiffs' Brief in Opposition to Defendants' Summary Judgment, it appears that plaintiff's quid pro quo claims are based on three occurrences: (a) Lori Stilley's exclusion from the ADL Project extension; (b) Petrosky's alleged sabotage of the April 14, 1994 overview; and (c) Lori Stilley's ongoing exclusion from publishing the book about the ADL Project.

Because she was acting as a student, any alleged "sabotage of the April 14, 1994 overview" is not a proper subject for a Title VII analysis due to the lack of an employer-employee relationship; [7] therefore, the Court will focus only on the two remaining contentions: that plaintiff was excluded from the ADL Project extension and that her ongoing exclusion from publishing a book on the ADL Project amounts to quid pro quo harassment.

### 1. *Exclusion from the ADL Project extension.*

■■■ Plaintiff alleges that Petrosky fired her from the ADL Project in retaliation for her refusal to succumb to his alleged advances. However, Dr. Stephen Koziol testified in his deposition that the amount of funding provided for the extension did not permit the University to retain the original full staff and that Koziol "took a central role" in determining the staffing needs for the extension and making recommendations about personnel to be retained. Appendix to Statement of Undisputed Material Facts in Support of the University's Motion for Summary Judgment, Exhibit 4, Deposition of Stephen Koziol, p. 165.

"In order to defeat summary judgment when the defendant answers the plaintiff's prima facie case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could

---

**7.** In connection with her dissertation, the relationship between Ms. Stilley and Petrosky was

one of student-professor.

reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes v. Perskie*, 32 F.3d 759 (3d Cir.1994) (citations omitted). Furthermore, a plaintiff's general and conclusory "allegations alone are insufficient to establish a material issue of fact." *Sola v. Lafayette College*, 804 F.2d 40, 45 (3d Cir.1986).

The Court finds that plaintiff has failed to point to any evidence from which a factfinder could reasonably either disbelieve the University's articulated legitimate reasons for excluding plaintiff from the ADL Project extension or believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the University's action in not rehiring plaintiff.

### 2. Exclusion from Publishing the Book about the ADL Project.

■ In support of her prima facie case, Plaintiff submits six of her own affidavits. In Affidavit 6, she states that one of the reasons for accepting employment on the ADL Project was to advance her academic and professional career. Affidavit, # 6. Furthermore, in her brief, plaintiff states that "[i]t is axiomatic in the world of academics that one must 'publish or perish'." As discussed above, a plaintiff's general and conclusory "allegations alone are insufficient to establish a material issue of fact." *Sola v. Lafayette College*, 804 F.2d 40, 45 (3d Cir. 1986).

The record contains nothing more than mere speculation on the issue of whether Plaintiff knew a textbook would be written following the ADL Project. Plaintiff has failed to point to any evidence from which a factfinder could reasonably believe that the prospect of publishing a book was an express or implied benefit of working on the ADL Project. Plaintiff's quid pro quo allegations must be dismissed because the record does not provide sufficient factual support for them.

For the reasons discussed, the University's motion as to Count V will be granted.

### F. Count VI—42 U.S.C. § 1983 against Petrosky

Section 1983 provides a civil remedy for acts taken under color of law that deprive "any citizen of the United States or person within the jurisdiction thereof" of "rights, privileges or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

■ In *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), the Supreme Court ruled that the statute of limitations for § 1983 actions is the limitations period for the relevant state's personal injury statute. Because the instant case arose within the Commonwealth of Pennsylvania, the Court must apply the two-year statute of limitations set forth in 42 Pa.C.S.A. § 5524(2).

The Court of Appeals for the Third Circuit in *Bougher v. University of Pittsburgh*, 882 F.2d 74 (3d Cir.1989), held that Pennsylvania's personal injury statute of limitations also applies to Title IX claims. Thus, plaintiff's claims under § 1983 and Title IX are governed by Pennsylvania's two-year statute of limitations.

■ Petrosky contends that this action was filed more than two years after the last alleged incident of sexual harassment and, thus, is barred by the applicable statute of limitations. The theory of plaintiffs' case against Petrosky, however, is not simply that Lori R. Stilley was sexually harassed by him, but that Petrosky has engaged, and continues to engage, in retaliatory conduct towards Lori R. Stilley. To prove this, plaintiffs assert they will establish, *inter alia*, that Petrosky has interfered with Lori R. Stilley's educational pursuits at the University of Pittsburgh, has damaged her academic reputation, and has denied Lori R. Stilley certain benefits of employment including, but not limited to: "(a) denial of professional credit for work on the project as a research associate; (b) denial of the opportunity to use her work on the project to satisfy her dissertation requirement; (c) denial of the opportunity to benefit from publishing her work on the project in her capacity as research associate; and (d) forcing her to start over on her

dissertation, and change the subject of her dissertation." Complaint at ¶ 89.

Accordingly, the Court finds that there is sufficient record evidence that the alleged violations by Petrosky of plaintiff's constitutional rights continued into the limitations period. Defendant Petrosky's motion for summary judgment on Count VI will be denied.

### G. Count VII—42 U.S.C. § 1983 against the University

■ In support of its motion for summary judgment on Count VII, the University argues: "[i]n order to state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of some identifiable constitutionally protected interest.... Plaintiff makes no claims that any of her rights have been violated distinct from her sexual harassment claims...." University's Brief, at 16. In *Stoneking v. Bradford Area School District*, the Court of Appeals for the Third Circuit, citing cases dating from 1952, held that the right to be free from an invasion of personal security was clearly established by 1980. 882 F.2d 720, 726–27 (3d Cir.1989), *cert. denied*, 493 U.S. 1044, 110 S.Ct. 840, 107 L.Ed.2d 835 (1990) (citations omitted). Consistent with this established law, plaintiff Lori Stilley's allegations in this case rise to the level of violations of clearly established constitutional rights. However, notwithstanding the fact that plaintiff's Complaint identifies a violation of a clearly established constitution right, the University's motion for summary judgment as to Count VII will be granted, as plaintiff's § 1983 claims are subsumed by Title IX by virtue of the *Sea Clammers* doctrine.

In *Middlesex County Sewerage Authority v. National Sea Clammers Association*, the Supreme Court held: "[W]hen 'a state official is alleged to have violated a federal statute which provides its own comprehensive enforcement scheme, the requirements of that enforcement procedure may not be bypassed by bringing suit directing under

§ 1983.'" 453 U.S. 1, 20, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981).

To date, the Court of Appeals for the Third Circuit has addressed twice the applicability of the *Sea Clammers* doctrine to cases in which a plaintiff asserted claims under Title IX and § 1983. *See Williams v. School Dist. of Bethlehem*, 998 F.2d 168 (3d Cir.1993), *cert. denied*, 510 U.S. 1043, 114 S.Ct. 689, 126 L.Ed.2d 656 (1994) (the complaint included claims under Title IX, § 1983 and the Pennsylvania Constitution); and *Pfeiffer v. Marion Center Area Sch. Dist.*, 917 F.2d 779 (3d Cir.1990) (the complaint included claims under Title IX, §§ 1983 and 1985, and state law claims under the Pennsylvania Human Relations Act). In both instances, the Court of Appeals concluded that Title IX establishes a comprehensive enforcement scheme and therefore held the § 1983 claims were subsumed within the Title IX claims.

Accordingly, following the directive of the Court of Appeals, the Court finds that the *Sea Clammers* doctrine dictates that the University's motion for summary judgment as to Count VII should be granted, as Plaintiff's § 1983 claims are subsumed by Title IX.

### H. Count VIII—Title IX

Defendant University moves for summary judgment on plaintiff Lori Stilley's claims under Title IX [8] arguing that there was no intentional discrimination by the University, as the alleged conduct by Petrosky was not within the scope of his employment.

■ In order to prove a prima facie case under Title IX, plaintiff must show:

1. that she was excluded from participation in or denied the benefits of or subjected to discrimination in an educational program;

2. that the program receives federal assistance; and

3. that the exclusion was on the basis of sex, i.e., gender.

8. Title IX provides, in pertinent part,
No person in the United States shall, on the basis of sex, be excluded from participating in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.
20 U.S.C. § 1681(a).

*Bougher v. University of Pittsburgh,* 713 F.Supp. 139, 143–44 (W.D.Pa.), *aff'd on other grounds,* 882 F.2d 74 (3d Cir.1989).

▪ In order to receive monetary damages under Title IX, plaintiff must also prove discriminatory intent by the University against her. *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 74–75, 112 S.Ct. 1028, 1037–38, 117 L.Ed.2d 208 (1992).

▪ As a threshold matter, the Court must determine what standard applies in reviewing plaintiff's Title IX claim of liability against the University for the sexual harassment by its professor against a student. Neither the Supreme Court of the United States nor the Court of Appeals for the Third Circuit has addressed what entails the requisite "intentional discrimination" needed to sufficiently establish a Title IX claim.

Although in *Franklin* the Supreme Court did not directly address the issue of a university's liability for the intentional acts of one of its professors, the Court appears to indicate that it would impose liability on a school district or university under agency principles for intentional sex discrimination by its agent, the professor. *Id.* at 74, 112 S.Ct. at 1037 (quoting *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)).

After *Franklin,* courts have adopted several different approaches in imputing liability to a school district for the sexual harassment by teachers against students, including the following: (1) the agency principles contained in the *Restatement (Second) of Agency* § 219(2)(b) (essentially a "negligent or reckless" standard); *see Rosa H. v. San Elizario Indep. Sch. Dist.,* 887 F.Supp. 140 (W.D.Tex. 1995); (2) knowledge or direct involvement by the school district; *see Howard v. Board of Educ.,* 876 F.Supp. 959 (N.D.Ill.1995) (involving sexual harassment of an employee rather than a student); (3) the Title VII standards of employer liability in sexual harassment cases (i.e. "knew or should have known" for hostile environment and strict liability for quid pro quo harassment), *see Murray v. New York Univ. College of Dentistry,* 57 F.3d 243 (2d Cir.1995); *Pinkney v. Robinson,* 913 F.Supp. 25 (D.D.C.1996) (involving sexual harassment of an employee rather than a student); and (4) strict liability, *see Bolon v. Rolla Public Schools,* 917 F.Supp. 1423 (E.D.Mo.1996); *Doe v. Petaluma City Sch. Dist.,* 830 F.Supp. 1560, 1574–75 (N.D.Cal.1993) (involving sexual harassment by peers).

Like the instant case, in *Rosa H. v. San Elizario Independent School District,* the district court was faced with the issue of how the discriminatory conduct of a teacher could be imputed to the school district. "After vociferous disagreement between the parties regarding the form the charge should take," the Court submitted issues to the jury based on § 219 of the Restatement (Second) of Agency.[9] *Rosa H.,* 887 F.Supp. at 142.

In reaching its decision, the court decided that in order to impute liability to the school district there must be, in effect, two torts: the intentional tort of the school employee and the negligence tort on the part of the school district. *Id.* at 143.

This Court, guided by the Supreme Court's *Franklin* decision, and adopting the reasoning of the *Rosa H.* court, holds that intentional discrimination by a professor is imputed to the university under the agency principles contained in the *Restatement (Second) of Agency* § 219(2)(b).

▪ Having determined that the plaintiff's claims under Title IX will be analyzed under agency principles, the question presented is whether summary judgment is an appropriate vehicle in which to excuse the defendant university from liability for the

---

**9.** Section 219 of the Restatement (Second) of Agency states:

WHEN A MASTER IS LIABLE FOR THE TORTS OF HIS SERVANTS

(1) A master is subject to liability for the torts of his servants committed while acting in the scope of their employment. (2) A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless: (a) the master intended the conduct or the consequences, or (b) the master was negligent or reckless, or (c) the conduct violated a non-delegable duty of the master, or (d) the servant purported to act or speak on behalf of the principal and there was reliance upon the apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation.

intentional acts of its agent, Professor Anthony R. Petrosky.

■ To prevail on a claim of intentional discrimination under Title IX, when applying § 219(2)(b) of the Restatement (Second) of Agency, the plaintiff must show that:

1. the school district is subject to Title IX;

2. plaintiff was sexually harassed or abused;

3. by an employee of the university;

4. the university had notice, either actual or constructive, of the sexual harassment or abuse;

5. the university failed to take prompt, effective, remedial measures; and,

6. the conduct of the university was negligent.

*Rosa H.,* 887 F.Supp. at 143.

The Court concludes that the record establishes that genuine issues of material fact exist with regard to whether plaintiff has met all six elements required under § 219(2)(b) of the Restatement (Second) of Agency. Accordingly, the University's motion for summary judgment on Count IX will be denied.

## IV. CONCLUSION

As more fully explained in the preceding discussion, Defendants' motions for summary judgment will be granted in part and denied in part.

An appropriate order will follow.

## ORDER

AND NOW, this 24th day of December, 1996, it is hereby **ORDERED** as follows:

1. Defendant UNIVERSITY OF PITTSBURGH OF THE COMMONWEALTH SYSTEM OF HIGHER EDUCATION, d/b/a THE UNIVERSITY OF PITTSBURGH'S ("the University") Motion for Summary Judgment (Document No. 24) is **GRANTED** as to Count I (assault and battery) of Plaintiffs' Complaint. Accordingly, Count I of Plaintiffs' Complaint as it relates to the University is **DISMISSED WITH PREJUDICE.**

2. The University's Motion for Summary Judgment is **DENIED** as to Count II (intentional and/or negligent infliction of emotional distress) of Plaintiffs' Complaint.

3. The University's Motion for Summary Judgment is **DENIED** as to Count III (loss of consortium) of Plaintiffs' Complaint.

4. The University's Motion for Summary Judgment is **GRANTED** as to Count V (Title VII) of Plaintiffs' Complaint. Accordingly, Count V of Plaintiffs' Complaint is **DISMISSED WITH PREJUDICE.**

5. The University's Motion for Summary Judgment is **GRANTED** as to Count VII (42 U.S.C. § 1983) of Plaintiffs' Complaint because those claims are subsumed by Title IX. Accordingly, Count VII of Plaintiffs' Complaint is **DISMISSED WITH PREJUDICE.**

6. The University's Motion for Summary Judgment is **DENIED** as to Count VIII (Title IX) of Plaintiffs' Complaint.

7. Defendant PETROSKY'S MOTION FOR SUMMARY JUDGMENT (**Document No. 26**) as to Count I (assault and battery) is **GRANTED.** Accordingly, Count I of Plaintiffs' Complaint as it relates to Petrosky is **DISMISSED WITH PREJUDICE.**

8. Defendant Petrosky's Motion for Summary Judgment as to Count II (intentional inflectional of emotional distress) is **DENIED.**

9. Defendant Petrosky's Motion for Summary Judgment as to Count IV (Title VII) is **GRANTED.** Accordingly, Count IV of Plaintiffs' Complaint is **DISMISSED WITH PREJUDICE.**

10. Defendant Petrosky's Motion for Summary Judgment as to Count VI (42 U.S.C. § 1983) is **DENIED.**