**Vincent BUCKLEN, Plaintiff,**

v.

**RENSSELAER POLYTECHNIC INSTITUTE, Defendant.**

**No. 1:00–CV–1146(FJS/DRH).**

United States District Court, N.D. New York.

Aug. 23, 2001.

Office of Karen L. Kimball, Karen L. Kimball, of counsel, Wynantskill, NY, for Plaintiff.

Pattison Sampson Ginsberg & Griffin, PC, Gerald H. Katzman, of counsel, Troy, NY, for Defendant.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, Chief Judge.

## I. INTRODUCTION

Plaintiff claims that Defendant unlawfully discriminated against him on the basis of his national origin (American) and his sex (male) in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000–e *et seq.*, Title IX of the Education Law, 20 U.S.C. § 1681 *et seq.*, and the New York State Executive Law § 290 *et seq.* ("Human Rights Law"). *See* Complaint at ¶ 5.

## II. BACKGROUND

Plaintiff, a former graduate student at Rensselaer Polytechnic Institute ("RPI"), sued RPI in state court for allegedly discriminating against him based on his national origin and gender in conjunction with his taking of the preliminary examination for his doctoral degree. Defendant removed the action from the Supreme Court of the State of New York for the County of Rensselaer to federal district court.

Plaintiff was a graduate student at RPI in the Material Sciences Department from January 1997 to August 1999. *See id.* at ¶ 12. During that time, Plaintiff worked as a graduate teaching assistant ("TA"). Plaintiff asserts that his evaluations as a

TA were uniformly good. *See id.* at ¶ 23. The problems arose when Plaintiff failed his preliminary examination for the third time in April 1999.

Plaintiff had failed the oral portion of his candidacy examination, for the first time, in February 1998. He took the oral portion of the examination again in October 1998 and again, before the same committee, failed. He was allowed to register for Ph.D. credits for the spring 1999 semester but was told he must take the examination again. He did so on April 1, 1999, and claims that two of the four members of the committee verbally assured him that he had passed the examination. On April 8, 1999, however, Plaintiff asserts that the other two members of the committee told him that he had failed the examination. *See id.* at ¶¶ 22–31. The reasons purportedly offered were that Plaintiff was nervous and had "failed to answer the most elementary questions." *Id.* Plaintiff claims that the committee members were "rude and intimidating during the examination." *See id.* at ¶ 38.[1]

Subsequent to Plaintiff's failing the oral examination for the third time, Dr. Seigel, the Chairman of the Department, informed Plaintiff that he had no recourse except to drop out of the program.[2] *See id.* at ¶ 44. Plaintiff then scheduled a meeting with the Dean of Students and Dr. Seigel. That meeting took place on April 26, 1999.[3] Subsequent to that meeting, on May 11, 1999, Plaintiff claims that the Dean of Students told him that he would not be permitted to take the examination again. *See id.* at ¶ 59. Plaintiff claims that after this meeting he continued to conduct re-

1. Plaintiff alleges that one of the committee members physically approached him during the examination and that that member and another talked to each other while Plaintiff was answering questions. *See* Complaint at ¶ 36.

2. Plaintiff alleges that Dr. Seigel was rude and intimidating during that meeting, which occurred on April 16, 1999. *See* Complaint at ¶¶ 44–45.

3. Plaintiff, once again, alleges that Dr. Seigel was rude and belligerent at the meeting. *See* Complaint at ¶ 56.

search and perform his duties as a TA.[4] *See id.* at ¶ 61.

Plaintiff, after working as a TA in the summer and having his research presented at an International Meeting, again asked the Dean of the Engineering School to consider his request for a modified preliminary examination. *See id.* at ¶ 70. On August 31, 1999, the Dean again refused to consider Plaintiff's request. *See id.* at ¶ 71. Plaintiff left RPI in August 1999 to take a job in Ohio. *See id.* at ¶ 73. Since that final denial of Plaintiff's request, there has been no contact between Plaintiff and Defendant. *See id.* at ¶ 72.

Plaintiff filed a charge with the EEOC and NYSDHR on February 8, 2000. The EEOC issued a right-to-sue letter on March 8, 2000, finding that Plaintiff's claims were not timely. *See* Pl.'s Complaint at ¶¶ 7–8. After receiving the right-to-sue letter, Plaintiff commenced the present action.

Plaintiff's claims of discrimination are based on his assertion that he has been prevented from attaining his doctoral degree because of Defendant's refusal to provide him a fair and equitable preliminary examination based on his national origin and sex. *See id.* at ¶¶ 79–80. Plaintiff alleges that although other students were given opportunities to retake the examination he was not. Specifically, he alleges that a female student was allowed to take the oral portion in a written format since she was too nervous to perform well on the oral portion. *See id.* at ¶ 48. He also alleges that a foreign student was allowed to take the examination a third time before a different committee. *See id.* at ¶ 49. Furthermore, he alleges that another foreign student was allowed to teach a course in lieu of repeating the examination. *See id.* at ¶ 50. Finally, Plaintiff argues that Defendant's refusal to provide him with a fair examination cost him his job at RPI and impaired his future career possibilities. *See id.* at ¶ 83.

Plaintiff seeks an injunction ordering Defendant to cease its discriminatory treatment of Plaintiff. He specifically seeks reinstatement as a Ph.D. candidate and requests the fair administration of the preliminary examination. Plaintiff also seeks compensatory damages for pain, suffering, humiliation, and loss of professional reputation, punitive damages and attorneys' fees.

Presently before the Court are Defendant's motion, pursuant to Rule 12 of the Federal Rules of Civil Procedure, to dismiss the action and Plaintiff's motion to amend his complaint to include claims under Title VI of the Civil Rights Act,[5] 42 U.S.C. § 2000d *et seq.*, and state contract law. The Court heard oral argument in support of, and in opposition to, these motions on December 8, 2000. At that time, the Court denied Plaintiff's motion to amend his complaint to allege causes of action under Title VI and state contract law and granted Plaintiff leave to amend his complaint with respect to his Title IX claim.[6] The following constitutes the

---

**4.** Plaintiff alleges in his complaint that he was even asked to serve as a TA in a course covering the very subject matter which he was told he had failed on the examination. The professor of the course allegedly told Plaintiff that he wanted him to serve as the TA because he was the graduate student with the best grasp of the subject matter. Plaintiff contends that this is inconsistent with the committee's claim that he did not know the material. *See* Complaint at ¶ 40.

**5.** Title VI states that no person, on the basis "of race, color, or national origin, [shall] be excluded from participation in, denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." *See* 42 U.S.C. § 2000d.

**6.** The Court notes that Plaintiff's Amended Complaint, filed with the Court on December 21, 2000, purports to assert claims under both

Court's decision with respect to Defendant's motion to dismiss pursuant to Rule 12 of the Federal Rules of Civil Procedure.

## III. DISCUSSION

The standard of review for motions to dismiss on the pleadings is that the complaint must be viewed in the light most favorable to Plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). A motion to dismiss should only be granted if Plaintiff can prove no set of facts that support his claim and entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The question is not whether Plaintiff will ultimately prevail but simply whether he is entitled to offer evidence to support his claims. *See Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996) (citation omitted). Thus, the Court must merely determine whether Plaintiff's complaint is legally sufficient. *See Festa v. Local 3 Int'l Bhd. of Elec. Workers*, 905

F.2d 35, 37 (2d Cir.1990). Furthermore, the standard is applied even more strictly in cases such as this one because Plaintiff alleges civil rights violations. *See id.* (citations omitted).

Defendant moves to dismiss Plaintiff's complaint in its entirety. Defendant specifically contends that Plaintiff's Title VII claim fails because it is time barred since Plaintiff did not file a charge with the EEOC within 300 days of the claimed discriminatory act and because Plaintiff was not an employee within the meaning of Title VII. Furthermore, Defendant asserts that all of Plaintiff's claims fail to allege sufficient facts or circumstances from which one can infer an intent to discriminate. The Court will address each of Defendant's contentions *seriatim.*

### A. Title VII Claim

Although the parties debate the timeliness of Plaintiff's EEOC complaint, the Court will assume *arguendo* that Plaintiff's action was timely filed in order to reach the merits of Plaintiff's Title VII claim.[7]

---

Title VI and state contract law. *See* Amended Complaint at ¶ 5. The Court reminds Plaintiff that, for the reasons stated at oral argument, the Court denied his motion to amend his complaint to assert those claims. The Court will, therefore, not consider those two claims. However, as stated at oral argument, if Plaintiff, during discovery, uncovers evidence supporting a claim under Title VI he may then move to amend his complaint to assert such a claim.

7. As to the timeliness of Plaintiff's suit, Defendant points out that the alleged discriminatory conduct took place on April 8, 1999 and a charge was not filed with the EEOC until February 8, 2000. Title VII clearly requires that a plaintiff file charges with the EEOC within 300 days of the discriminatory conduct. *See* 42 U.S.C. § 2000e–5(e). Plaintiff, therefore, exceeded the 300 day filing requirement by six days. *See* Affidavit of Gerald H. Katzman, sworn to August 30, 2000 ("Katzman Aff."), at ¶¶ 11–12. In fact, as previously mentioned, based on this time lapse, the EEOC declined to investigate the claim since

it was untimely. *See id.* at Ex. H. A plaintiff's failure to timely file a charge with the EEOC renders a claim time-barred, and the district court is without jurisdiction over the claim. *See Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir.1998).

Plaintiff asserts, however, that Defendant engaged in a continuous course of conduct which encompassed the entire examination process and that he checked the continuous violation box on the EEOC form. Plaintiff has failed to provide the Court with a copy of the EEOC complaint, however, so the Court is unable to verify that claim. Courts in this Circuit have held that a party may not rely on the continuing violation exception in district court actions when he fails to assert it in his EEOC charge. *See Commodari v. Long Island Univ.*, 89 F.Supp.2d 353, 381 (E.D.N.Y.2000) (citing *Carrasco v. New York City Off–Track Betting Corp.*, 858 F.Supp. 28, 31 (S.D.N.Y. 1994) (citation omitted)).

The initial notification of Plaintiff's failure of the examination on April 8, 1999 did begin the process, but Plaintiff clearly appealed that decision and sought further review and accommodation. It was not until at least May

Title VII is violated when Plaintiff is a member of a protected class, and is qualified for an employment position yet is not given the job under circumstances giving rise to an inference of discrimination. *See, e.g., McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 801, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Plaintiff argues that he was denied privileges of employment in the graduate program based on preferential treatment to females and minorities.

Defendant counters that Plaintiff cannot invoke the protections of Title VII since he is a graduate student and that, although graduate students do perform some teaching and research duties, the dominant purpose of their relationship with a school is educational. Defendant contends that Plaintiff is, therefore, not an employee for purposes of Title VII and that, even if the Court concludes that Plaintiff had "dual roles" as an employee and a student, Plaintiff has not alleged any adverse action taken with respect to his status as an employee.

Since Title VII does not helpfully define employee, courts weigh various factors in determining a plaintiff's employment status. *See Aymes v. Bonelli,* 980 F.2d 857, 861 (2d Cir.1992). The Second Circuit focuses on whether the person received remuneration from the supposed employer. *See Pemrick v. Stracher,* 67 F.Supp.2d 149, 162 (E.D.N.Y.1999) (citing *O'Connor v. Davis,* 126 F.3d 112, 116 (2d Cir.1997), cert. denied, 522 U.S. 1114, 118 S.Ct. 1048, 140 L.Ed.2d 112 (1998)).[8] Plaintiff argues that since he received wages, had taxes withheld, and received benefits, he was indeed an employee of RPI.

Assuming *arguendo* that Plaintiff is an employee of Defendant for purposes of Title VII, Plaintiff is nonetheless unable to state a claim under Title VII since he does not allege that Defendant took a discriminatory action with regard to his status as an employee. While the Court acknowledges the unique dual role of graduate students, as potentially both students and employees, it cannot extend the parameters of Title VII to encompass purely academic decisions, such as the testing and qualification of doctoral students, that have only a tangential effect on one's status as an employee.[9]

---

1999 that Defendant clearly informed Plaintiff that it would no longer allow him to retake the examination. That definitive ruling by Defendant is clearly related to the initial failure of the examination on April 8th. In order to reach the merits of Plaintiff's claims, the Court will assume that based on the final decision of the Dean of Students in May 1999 Plaintiff's complaint was timely filed.

8. Indeed a district court in the Sixth Circuit focused on the economic realities test and found that a graduate student was an employee for Title VII purposes. *See Ivan v. Kent State Univ.,* 863 F.Supp. 581, 585–86 (N.D.Ohio 1994). The *Ivan* court went on to find that the plaintiff had failed to set forth a prima facie case under Title VII since she failed to show that the defendant had the intent to discriminate. *See id.* at 586.

9. Similarly, a district court in Pennsylvania found that when a party has the dual role of student and employee any inquiry under Title VII must focus only on the employee-employer relationship. *See Stilley v. University of Pittsburgh,* 968 F.Supp. 252, 261 (W.D.Pa. 1996). That court concluded that "[a]ll issues pertaining to the completion of plaintiff's dissertation relate to plaintiff's role as a student and not as an employee." *Id.* The court, therefore, regarded any allegations of retaliation regarding the plaintiff's dissertation as improper grounds for a Title VII claim. *See id.*

In another case, the plaintiff sought admissions to the graduate program in chemistry at Rice University. *See Pollack v. Rice Univ.,* No. H–79–1539, 1982 WL 296, *1 (S.D.Tex. Mar.29, 1982). The court in that case liberally construed the plaintiff's complaint as alleging discrimination in his quest for employment as a research chemist or as an instructor at the university. *See id.* The court concluded that either way the employment sought would be "attendant to his capacity as a graduate student." *Id.* The court, therefore, framed the issue as whether Title VII

The Court, therefore, dismisses Plaintiff's Title VII claim since that claim does not allege discrimination in terms or conditions of his employment but rather discrimination against him in his role as a student.

## B. Title IX Claim

Since the alleged discriminatory action involved the provision of educational services, the Court will consider Plaintiff's Title IX claim.[10] The Court notes that courts in this Circuit, and others, analyze Title IX claims under the Title VII framework. *See, e.g., Murray v. New York Univ. Coll. of Dentistry*, 57 F.3d 243, 248 (2d Cir.1995); *Lipsett v. Univ. of Puerto Rico*, 864 F.2d 881, 896–97 (1st Cir.1988).

■ To prove a prima facie case under Title IX, Plaintiff must simply show that he was excluded from participation, denied the benefits of, or subjected to discrimination in an educational program, that the program receives federal assistance, and that the exclusion was on the basis of his sex.[11] *See Stilley v. University of Pittsburgh*, 968 F.Supp. 252, 265 (W.D.Pa.1996).

■ Plaintiff alleges discrimination on the basis that he is a male. He claims that, had he been a female, Defendants would have given him the opportunity to take the examination in writing, would have given him a different committee on the third examination, or would have permitted him to take a course to make up for any deficiencies in his understanding of the materials. Viewing Plaintiff's amended complaint in the light most favorable to Plaintiff, *see Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683, the Court concludes that Plaintiff has "allege[d] events that, if proven, would support an inference of discrimination." *Yusuf v. Vassar College*, 35 F.3d 709, 715–16 (2d Cir.1994) (citations omitted). The Court, therefore, denies Defendant's motion to dismiss Plaintiff's Title IX claim.

## C. New York Human Rights Law Claim

To the extent that Plaintiff raises a claim under New York's Human Rights Law regarding the adverse educational decision, the Court will allow this claim to proceed along with Plaintiff's Title IX claim. *See Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 764–65 (2d Cir.1998) (analyzing claims under § 296 of the New York Human Rights Law under the same standards used for Title VII and, therefore, Title IX claims). Plaintiff may not, however, as discussed in regards to Plaintiff's Title VII claim, assert a cause of action under the Human Rights Law for employment discrimination.

## IV. CONCLUSION

After carefully reviewing the file, the parties' submissions and oral arguments

---

should be construed to afford a cause of action to a person "seeking admission to a scholastic program which entails the performance of services for remuneration, where the services are completely incidental to the scholastic program." *Id.* (footnote omitted). The court found that such a person was a student and not an employee. In fact, the court went so far as to state that admission to the graduate program was not related to employment for purposes of Title VII. *See id.*

**10.** The United States Supreme Court has held that Title IX is enforceable through an im-

plied private right of action. *See Cannon v. Univ. of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979).

**11.** Title IX provides that: "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance, ..." 20 U.S.C. § 1681 (2000). Therefore, to the extent that Plaintiff's claims are based on national origin discrimination they are not covered under Title IX.

and the relevant law, and for the reasons stated herein and at oral argument, it is hereby

**ORDERED** that Defendant's motion to dismiss is **GRANTED** as to Plaintiff's claim of employment discrimination under Title VII and New York Human Rights Law but **DENIED** as to Plaintiff's claim of educational discrimination under Title IX and New York Human Rights Law; and it is further

**ORDERED** that Plaintiff's motion to amend his complaint is **DENIED**; and it is further

**ORDERED** that the parties contact Magistrate Judge David R. Homer within fourteen days of the date of this Order to schedule a Rule 16 conference.

**IT IS SO ORDERED.**