**ROSA H., individually and as Next Friend of Deborah H.,**

v.

**SAN ELIZARIO INDEPENDENT SCHOOL DISTRICT.**

No. EP–94–CA–103–DB.

United States District Court, W.D. Texas, El Paso Division.

June 12, 1995.

Tom Stanton and Mark Berry, El Paso, TX, for plaintiff.

E.K. Peticolas, El Paso, TX, and Darrell G–M Noga, Dallas, TX, for defendant.

## MEMORANDUM OPINION

BRIONES, District Judge.

Deborah H. brought this action under Title IX of the Educational Amendment Act of 1972, codified at 20 U.S.C. §§ 1681–88. While enrolled at San Elizario High School, she took part in an afterschool karate class taught by John Contreras. The program was run by San Elizario Independent School District through its special programs office. While enrolled in this class, Deborah claimed she was sexually abused by Contreras. The parties stipulated that the San Elizario Independent School District was an educational institution that received federal funds and therefore Title IX is applicable. Further, the parties stipulated that John Contreras was an employee of the school district at the time in question. The three-woman, five-man jury remained attentive throughout often tedious testimony. After a four-day trial, the jury found for Deborah H. and awarded past and future compensatory damages.

### Facts

A brief recitation of the facts is in order.[1] Deborah H. is a troubled youth. At the time of the incidents made the basis of this lawsuit she was fifteen years old. Evidence was adduced at trial regarding a long history of mental, physical and sexual abuse beginning at least as early as when the plaintiff was six years old and continuing beyond the time of the events in this case to the present day. Over a period beginning in the late fall of 1992 and continuing into spring of 1993, Deborah was involved in a sexual relationship with Contreras, who was twenty-nine at the time of these incidents. Intercourse between Deborah and Contreras took place in his vehicle and at Contreras' home. At least one of the meetings occurred at the school after the karate class concluded. Deborah's parents hired Contreras to give private karate

---

1. This factual recitation is not a Finding but only a brief overview based on the evidence presented at trial on which the jury may have based its answers.

lessons to their four children including Deborah. Contreras visited Deborah's mother's house on several different occasions, sometimes with no other adult being present. Contreras gave Deborah rides home from school on multiple occasions. Contreras provided her with and encouraged her to use drugs. Deborah ditched school at Contreras' urging. Deborah's mother became increasingly suspicious of the amount of time Contreras spent with her daughter.

Eventually, during a meeting between Deborah, her mother and a school counselor held February 22, 1993, the subject of Contreras came up. Deborah had an outburst to the effect of "Do you want me to say I'm f___ing the guy?" The counselor made a memorandum of the meeting which detailed the discussion. A meeting was held the next day between the counselor and other school officials where this comment and the prior meeting in general were discussed. A report from other students in the karate class indicated that Contreras spent all his time with "his girlfriend" (meaning Deborah); however, this statement was later partially retracted. On March 29, Deborah H. attempted suicide. She was taken to a hospital in El Paso where she was visited by school personnel. At this time she made reference to her twenty-nine-year-old boyfriend. After discussion with school personnel, the superintendent canceled the karate program. Subsequently, after consulting with legal counsel, the superintendent reversed herself and the program continued though the end of the school year. Contreras was rehired for the 1993–1994 school year but was terminated for other reasons during the fall semester.

Deborah, through her mother, sued San Elizario Independent School District and John Contreras under both Title IX and 42

U.S.C. § 1983. Summary Judgment was entered on behalf of Defendant School District under the § 1983 claim and a dismissal was entered on behalf of Defendant Contreras on the Title IX claim. At the close of the evidence, the Plaintiff dismissed as against Defendant Contreras on the § 1983 claim. Pursuant to the Federal Rules of Civil Procedure, this was agreed to by all parties.

The charge was read to the jury and, after closing arguments, the jury retired to deliberate. After approximately two hours of deliberation the jury returned a verdict in Plaintiff's favor.

### Title IX

■ There is no doubt in the Court's mind that in the Fifth Circuit, Title IX is to be analyzed under principles from Title VI of the Civil Rights Act of 1964, codified at 42 U.S.C. §§ 2000d–2000d–7. *Chance v. Rice University*, 984 F.2d 151 (5th Cir.1993); See also *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979). Unfortunately, the Fifth Circuit has not addressed the issue of imputed liability under Title IX, the core issue in the case-at-bar. The issue before the Court is: How could the wrongful, discriminatory conduct of Contreras be imputed to the school district?

■ After vociferous disagreement between the parties regarding the form the charge should take, ranging from reworked Title VII arguments by Plaintiff to rewarmed § 1983 arguments from Defendant, the Court submitted issues to the jury based on § 219 of the Restatement (Second) of Agency.[2] The Court specifically looked at subsection (2)(b).[3] In the Court's mind, there is no question that any school district employee molesting students is acting outside the course and scope of his or her employment.

**2.** § 219 of the Restatement (Second) of Agency states:

WHEN A MASTER IS LIABLE FOR THE TORTS OF HIS SERVANTS

(1) A master is subject to liability for the torts of his servants committed while acting in the scope of their employment.

(2) A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless:

(a) the master intended the conduct or the consequences, or

(b) the master was negligent or reckless, or

(c) the conduct violated a non-delegable duty of the master, or

(d) the servant purported to act or speak on behalf of the principal and there was reliance upon the apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation.

**3.** The Court also strongly considered subsection (2)(d).

Further, sexual abuse of a student is always an intentional act. However, to impute liability to the school district there must be some further action or inaction on the part of the school district which would give rise to liability. Simply put, § 219(2)(b) requires that there be, in effect, two torts: The intentional tort of the school employee and the negligence tort on the part of the school district.[4] Because the suit is against the school district, the requirement that a second negligence tort on the part of the school district be proven by plaintiff does not seem unduly burdensome nor outside the intent of the law, that is, to provide a remedy to those who have suffered discrimination on the basis of gender while at an educational facility receiving federal funds as mandated by Title IX and the applicable case law. *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992).

■ Based on this Court's application of § 219(2)(b), to prevail on a claim of intentional discrimination under Title IX, the plaintiff must show that: 1) The school district is subject to Title IX; 2) plaintiff was sexually harassed or abused (the intentional conduct); 3) by an employee of the school district; 4) the school district had notice, either actual or constructive, of the sexual harassment or abuse; 5) the school district failed to take prompt, effective, remedial measures; and, 6) the conduct of the school district was negligent.

For 99.9% of all school districts, the first element will be met and stipulated to as in this case. However, it is conceivable that some school somewhere may not be subject to Title IX.

As to the second element, plaintiff must prove that he or she was sexually harassed or abused. When, as in this case, there was little, if any, controverting testimony to the plaintiff's claim of abuse, there can be little doubt that it occurred. Coupled with the third element, which in most similar situations would also be stipulated to by the par-

ties, the second and third elements combine to form the intentional conduct which is the first requirement of imputed liability under § 219. The Supreme Court has held that when a teacher sexually harasses or abuses a student because of that student's sex, that teacher intentionally "discriminates" on the basis of sex. *Franklin,* 503 U.S. at 73, 112 S.Ct. at 1037.

Under this Court's interpretation of Title IX, San Elizario Independent School District has a duty not to act negligently toward its students in the face of intentional discriminatory conduct by one of its employees. The fourth element regarding notice affords the school district the opportunity to do *something* about the situation. In cases like the one at bar, because such abuse is often highly secretive in nature, the school district should not be liable if the first notice it had of the discriminatory situation was long after the conduct occurred and the school district had no opportunity to remedy the situation. On the other hand, the school district is in the best position to be on the lookout for discriminatory conduct in the form of abuse. The children themselves should not be a line of defense shielding the school district from liability. A "knew or should have known" requirement mandates that the school district monitor its employees and students and prevents a situation where the district, through its employees or policies, turns a blind eye toward discriminatory conduct.

The fifth element requires that the school district be given opportunity to act on behalf of the student, that is, terminate the discriminatory conduct, before being subject to liability.

The issue then turns on whether fact-finder determines that the actions or inactions of the school district were negligent. If these actions were found to be negligent, then the school district, under § 219(2)(b) as applied to Title IX, is liable for the conduct of the employee *and* its own conduct.[5]

---

4. If, as in the case of a cover-up, the school district acted intentionally then there is no need to impute liability.

5. The Court is of the opinion that "harm" is an understood element of this test and may be quan-

tified in terms of both the harm stemming from the conduct of the employee and the conduct of the school district even if the individual is not a separate party to the suit.

**144**

In the case at bar, the Court included standard pattern instructions on the definitions of "negligence", "ordinary care" and "proximate cause". The charge also included pattern instructions on elements of damages. The verdict form asked questions based on the test as laid out above. Postdeliberation interview of the jurors disclosed that the jury spent the great majority of its time and discussion not on the issues of liability but on determining the amount of damages to be awarded.

From a reading of case law it is clear that district courts throughout the nation have struggled with the proof requirements of Title IX in situations like the one before the Court. With the number of similar cases on the docket of this Court and others, giving effect to Title IX, which in turn speaks to one of society's greatest harms—the sexual abuse of children, is of paramount importance.