Melissa J. SENEWAY, Plaintiff,

v.

CANON McMILLAN SCHOOL DISTRICT, Donald Strang, in his individual and official capacity as prior Superintendent of the Canon McMillan School District, Eugene Buchlietner, in his individual and official capacity as Principal of Canon McMillan High School, and Nick Bayat, in his individual and official capacity as former Principal of Canon McMillan High School, Defendants.

Civil Action No. 94–1840.

United States District Court, W.D. Pennsylvania.

June 10, 1997.

Alan H. Perer, Swensen, Perer & Johnson, Pittsburgh, PA, for plaintiff.

Eileen Koepfer Narvin, Law Offices of Daniel F. LaCava, David M. Neuhart, John Edward Wall, Nancy R. Winschel, Dickie, McCamey & Chilcote, Pittsburgh, PA, for defendants.

## MEMORANDUM OPINION

LEE, District Judge.

Before the Court is defendants' motion for summary judgment (**Document No. 46**). After careful consideration of defendants' motion, the extensive supporting material in support of and in opposition thereto, the memoranda in support of and in opposition thereto, the relevant case law, and the record as a whole, the court will grant, in part, and deny, in part, defendants' motion.

## I. BACKGROUND

On November 2, 1994, Plaintiff, Melissa J. Seneway, brought this action pursuant to 42 U.S.C. § 1983 against the Canon McMillan School District ("School District"); Donald Strang, the prior superintendent of the Canon McMillan School District; and Eugene Buchlietner, the principal of Canon McMillan High School ("Canon McMillan"), alleging violations of the Fifth, Eighth and Fourteenth Amendments. The individual defendants were sued in both their individual and official capacities.

On June 22, 1995, plaintiff filed a "Second Amended Complaint" (Document No. 30), wherein she added as an additional defendant, Nick Bayat, in his individual and official capacity as former principal of Canon McMillan High School, and also asserted a claim under 42 U.S.C. § 1983 against him. One week later, on June 29, 1995, plaintiff filed an "Amended Complaint" (Document No. 31), wherein a claim for liability under Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681—1688 ("Title IX"), was brought exclusively against the School District.

The gravamen of the complaint is that defendants have deprived plaintiff of her rights, privileges and immunities secured by the constitutional laws of the United States, specifically her liberty interest to be free in her person from threats, intimidation and sexual abuse and misconduct such as that perpetrated by James Neuman ("Neuman"), a School District employee who was the head wrestling coach and a teacher/instructor when plaintiff was a student at Canon McMillan High School.[1]

Plaintiff avers that from November 3, 1992, to February 7, 1993, on three separate occasions, she was subjected to sexual abuse and harassment by Neuman. First, on November 3, 1992, while plaintiff, an eleventh grader at the time, was attending a physical education class, Neuman offered to weigh her privately in the wrestling room. Once there, Neuman proceeded to "place his hands on her buttocks and lift [her] up, stating to her that this was a procedure used to make wrestlers weigh less at their weigh-ins." Complaint, ¶ 12.

Two days later, on November 5, 1992, plaintiff alleges that Neuman kissed her, "fondled her breasts and made inappropriate and suggestive statements to her." Complaint, ¶ 14. The third incident occurred on or about February 7, 1993, while plaintiff was conducting an interview of Neuman on behalf of the school newspaper. Neuman placed his hand on plaintiff's thigh and started rubbing her leg. Complaint, ¶ 16.

Plaintiff further alleges that Neuman had engaged in "sexual conduct, abuse and/or harassment with other students prior to the incidents involving plaintiff" and that the school district and the individual defendants, all school administrators, knew or should have known about Neuman's offensive and abusive conduct with respect to these students. Complaint, ¶ 18. Additionally, plaintiff contends that despite the actual and/or constructive notice by defendants of Neuman's improper conduct with female students, defendants "failed to take any action to protect the health, safety and welfare of the female student body in general and the plaintiff in particular." Complaint, ¶ 20.

---

1. Since April 6, 1993, James Neuman has been suspended from Canon McMillan High School. The Board of School Directors of the Canon McMillan School District has charged Neuman with "engaging in a violation of the School Laws, sexual harassment, immorality and improper conduct" arising from his alleged misconduct with Plaintiff and other former students. Defendants' brief in support of motion for summary judgment, Appendix T. The record evidence also indicates that Neuman pled guilty to the crime of harassment in the case of *Commonwealth of Pennsylvania v. James D. Neuman,* No. 1164 of 1993 and No. 1470 of 1993.

Finally, Plaintiff alleges that the School District and the individual defendants, acting within the scope of their employment, adopted and maintained a practice, custom or policy of deliberate or reckless indifference to Neuman's conduct.

Defendants have filed a motion for summary judgment. The first ground for the motion is that plaintiff's claims are barred by the statute of limitations. Next, defendants assert that plaintiff's § 1983 claims should be dismissed in their entirety.

Lastly, defendants argue that plaintiff's Title IX claim should be dismissed as there was no intentional discrimination by the School District and the School District is not vicariously liable for Neuman's alleged misconduct. The parties have extensively briefed the issues raised by the motion and have filed evidence, including affidavits and deposition testimony, in support of their positions.

## II. SUMMARY JUDGMENT STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure reads, in pertinent part, as follows:

> [Summary Judgment] shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

In interpreting Rule 56(c), the United States Supreme Court has stated:

> The plain language ... mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

An issue of material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The court must view the facts in a light most favorable to the non-moving party and the burden of establishing that no genuine issue of material fact exists rests with the movant. *Id.* at 242, 106 S.Ct. at 2506–07. The "existence of disputed issues of material fact should be ascertained by resolving 'all inferences, doubts and issues of credibility against the moving party.'" *Ely v. Hall's Motor Transit Co.,* 590 F.2d 62, 66 (3d Cir.1978) (quoting *Smith v. Pittsburgh Gage & Supply Co.,* 464 F.2d 870, 874 (3d Cir.1972)). Final credibility determinations on material issues cannot be made in the context of a motion for summary judgment, nor can the district court weigh the evidence. *Josey v. John R. Hollingsworth Corp.,* 996 F.2d 632 (3d Cir.1993); *Petruzzi's IGA Supermarkets, Inc. v. Darling–Delaware Co.,* 998 F.2d 1224 (3d Cir.1993).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing'— that is, pointing out to the District Court— that there is an absence of evidence to support the non-moving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2554. If the moving party has carried this burden, the burden shifts to the non-moving party who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *Petruzzi's IGA Supermarkets,* 998 F.2d at 1230. When the non-moving party's evidence in opposition to a properly supported motion for summary judgment is "merely colorable" or "not significantly probative," the court may grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

"One of the most common forms of evidence used on a summary judgment motion is affidavits ... in support of or opposition to a Rule 56 motion...." Charles Alan

Wright, Arthur R. Miller & Mary Kay Kane, 10A Federal Practice and Procedure, § 2722, at 54. Hearsay evidence contained in affidavits and deposition testimony may be sufficient to survive summary judgment motion unless such evidence clearly would not be admissible at trial. *Clark v. Commonwealth of Pennsylvania*, 885 F.Supp. 694, 709 n. 3 (E.D.Pa.1995) (citing Petruzzi's IGA Supermarkets, 998 F.2d at 1234 n. 9).

### III. DISCUSSION

#### A. *Statute of Limitations*

In *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), the Supreme Court ruled that the statute of limitations for § 1983 actions is the limitations period for the relevant state's personal injury statute. Because the instant case arose within the Commonwealth of Pennsylvania, the Court must apply the two-year statute of limitations set forth in 42 Pa.C.S.A. § 5524(2).

The Court of Appeals for the Third Circuit in *Bougher v. University of Pittsburgh*, 882 F.2d 74 (3d Cir.1989), held that Pennsylvania's personal injury statute of limitations also applies to Title IX claims. Thus, plaintiff's claims under § 1983 and Title IX are governed by Pennsylvania's two-year statute of limitations.

Because Pennsylvania's statute of limitations for personal injuries is applicable to plaintiff's federal claims in this matter, the court must also borrow Pennsylvania's tolling statute. Furthermore, operation of the tolling statute is "governed by state law." *Wilson*, 471 U.S. at 269, 105 S.Ct. at 1943.

Defendants present a two-prong argument that plaintiff's claims are barred by the applicable statute of limitations. First, defendants contend that plaintiff is required to prove that the School District's policy of not discouraging abuse extended into the limitations period. Secondly, defendants contend that plaintiff's Title IX claim is time barred as this claim was first asserted in an amended complaint filed on June 29, 1995, more than two years after the alleged abuse occurred. The Court is unable to accept either contention.

While a bit unclear, defendants seem to argue that the School District had a policy prohibiting sexual misconduct and that this policy was applied in the instant case, as evidenced by Neuman's suspension. Thus, defendants argue, the record is "barren of any evidence that the policy of indifference alleged by plaintiff continued into the limitations period." Defendants' brief, at 5. However, the treatment of Neuman after plaintiff's assault was not, and obviously could not have been, a cause of her assault.

■ The theory of plaintiff's case is not simply that she was sexually abused, but that she was abused by a teacher because of defendants' reckless indifference in protecting plaintiff's constitutional rights. To prove this, plaintiff will attempt to show that over an approximate ten-year period, from the early to mid–1980's until, at least, the time of plaintiff's assaults in 1992/1993, defendants fostered, through their policies, procedures and/or customs, an environment of reckless indifference toward sexual abuse of female students by a teacher at the Canon McMillan High School. (Prior incidents alleging misconduct on behalf of Neuman with students, other than plaintiff, are discussed infra.)

Accordingly, the Court finds that there is sufficient record evidence that the policy of indifference alleged by plaintiff continued into the limitations period.

■ Count IV of plaintiff's complaint alleges a claim for relief against the School District under Title IX. Defendants argue that this claim is barred as it was first asserted in an amended complaint filed on June 29, 1995, more than two years after the alleged abuse occurred. Section 5533(b) of the Pennsylvania Code, however, identifies infancy as a condition which tolls the running of its personal injury and other statutes of limitations.[2] Plaintiff attained majority on July

---

2. The statute reads, in pertinent part:

(b) Infancy.—If an individual entitled to bring a civil action is an unemancipated minor at the time the cause of action accrues, the period of minority shall not be deemed a portion of the time period within which the action must be commenced. Such person shall have the same time for commencing an action after attaining

11, 1994, Plaintiff's brief, at 5; thus, she has until July 11, 1996 to file any actions against defendants. Therefore, the Court concludes that plaintiff's Title IX claim was filed clearly within the applicable statute of limitations period.

"Defendants bear a heavy burden in seeking to establish as a matter of law that the challenged claims are barred" by the applicable statute of limitations. *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 498 (3d Cir.1985). Reviewing the evidence in the light most favorable to plaintiff, the Court concludes that defendants have not satisfied that heavy burden. Therefore, the motion for summary judgment, as it pertains to the statute of limitations defense, is denied.

B. *Evaluation of § 1983 Claims*

In Counts I, II, III and V of Plaintiff's complaint, it is alleged that defendants have deprived plaintiff of her Constitutional rights in violation of § 1983 of the Civil Rights Act, 42 U.S.C. § 1983. Defendants seek to have these claims dismissed for the following three reasons.

First, the School District contends that plaintiff's § 1983 claims are subsumed within her Title IX claim. If the § 1983 claims are not subsumed within the Title IX claim, the School District next argues that as a matter of law plaintiff's § 1983 claims should be denied in their entirety on their merits as it had no affirmative duty to protect plaintiff nor is there any policy, practice or custom which would implicate the School District. In the alternative, it is asserted that the individual defendants Strang, Buchlietner and Bayat are entitled to qualified immunity.

Defendants arguments will be discussed in seriatim.

a. *Liability of the School District*

In Count I of her complaint, Plaintiff alleges that she has been deprived by the School District, its agents, servants and employees, of her rights, privileges and immunities secured by the constitutional laws of the United States. Plaintiff's injuries and damages were allegedly "caused by and resulted from the policies, customs, usages, practices and procedures" established by the School District. Plaintiff's Complaint, Count I.

The School District argues that under the *Sea Clammers* doctrine, plaintiff's constitutional claims under § 1983 should be "subsumed" within her Title IX claim. In *Sea Clammers,* the Supreme Court held: "[W]hen 'a state official is alleged to have violated a federal statute which provides its own comprehensive enforcement scheme, the requirements of that enforcement procedure may not be bypassed by bringing suit directly under § 1983.'" *Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 20, 101 S.Ct. 2615, 2626, 69 L.Ed.2d 435 (1981).

Plaintiff argues that the *Sea Clammers* doctrine is inapplicable because her claims under § 1983 and Title IX are separate, alternative theories of recovery, which thereby preclude the subsuming of the § 1983 claims under Title IX. In support of her position, plaintiff, relying upon the decision rendered by the Court of Appeals for the Third Circuit in *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720 (3d Cir.1989), *cert. denied,* 493 U.S. 1044, 110 S.Ct. 840, 107 L.Ed.2d 835 (1990) ("*Stoneking II* "), states that the "Third Circuit has firmly established viability of a § 1983 action in cases involving the sexual abuse of a student by a teacher." Plaintiff's brief, at 8.

The Court, however, finds that Plaintiff's reliance upon *Stoneking* is misplaced. While the *Stoneking* plaintiff did file suit under § 1983, she did not bring a Title IX claim. Therefore, a *Stoneking* analysis is inapplicable to the issue of whether a § 1983 claim is subsumed into a Title IX claim.

To date, the Court of Appeals for the Third Circuit has addressed twice the applicability of the *Sea Clammers* doctrine to

---

majority as is allowed to others by the provisions of this subchapter. As used in this section the term "minor" shall mean any individual who has not yet attained the age of 18.

42 Pa.C.S.A. § 5533(b).

cases in which a plaintiff asserted claims under Title IX and § 1983. *See Williams v. School Dist. of Bethlehem,* 998 F.2d 168 (3d Cir.1993), *cert. denied,* 510 U.S. 1043, 114 S.Ct. 689, 126 L.Ed.2d 656 (1994) (the complaint included claims under Title IX, § 1983 and the Pennsylvania Constitution); and *Pfeiffer v. Marion Center Area Sch. Dist.,* 917 F.2d 779 (3d Cir.1990) (the complaint included claims under Title IX, §§ 1983 and 1985, and state law claims under the Pennsylvania Human Relations Act). In both instances, the Court of Appeals concluded that Title IX establishes a comprehensive enforcement scheme and therefore held the § 1983 claims are subsumed within Title IX claims.

Accordingly, following the directives of the Court of Appeals, the Court finds that the *Sea Clammers* doctrine dictates that Defendants' motion for summary judgment as to Count I of plaintiff's complaint should be granted, as Plaintiff's § 1983 claims are subsumed by Title IX.

### b. *Liability of the Individual Defendants*

In Counts II, III, and V of the complaint, plaintiff alleges that the individual defendants, while acting under color of state law, deprived of her rights, privileges and immunities secured by the constitutional laws of the United States. She alleges that the individual defendants maintained a policy, custom, or practice which played an affirmative role in bringing about the sexual abuse she suffered and that the defendants' conduct was deliberately indifferent to the health, safety and welfare of the female student body in general and plaintiff in particular.

Each individual defendant asserts that he is entitled to be dismissed from this suit under the doctrine of qualified immunity. Qualified immunity entitles governmental officials performing discretionary functions to immunity when their conduct does "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Thus, in this case, the individual defendants are entitled to qualified immunity if "reasonable school officials in the position of defendants and with the informa-

tion then available to them should have known that their alleged actions or omissions were unlawful." *Stoneking v. Bradford Area Sch. Dist.,* 856 F.2d 594, 598 (3d Cir.1988) ("*Stoneking I*"), vacated sub nom. *Smith v. Stoneking,* 489 U.S. 1062, 109 S.Ct. 1333, 103 L.Ed.2d 804 (1989) (citing *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987)).

The first inquiry for the Court in determining whether the individual defendants are entitled to qualified immunity from this lawsuit is to determine whether plaintiff has alleged a deprivation of any right secured by the constitution. Plaintiff states that she has a liberty interest in her personal bodily integrity protected by the Fourteenth Amendment. Defendants do not argue otherwise.

In *Stoneking II,* the Court of Appeals for the Third Circuit, citing cases dating from 1952, held that the right to be free from an invasion of personal security was clearly established by 1980. 882 F.2d at 726–27 (citing *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209–10, 96 L.Ed. 183 (1952); *Ingraham v. Wright,* 430 U.S. 651, 673 & n. 41, 97 S.Ct. 1401, 1413–14 & n. 41, 51 L.Ed.2d 711 (1977)). Consistent with this established law, Plaintiff's allegations in this case rise to the level of violations of clearly established constitutional rights.

Having established that plaintiff's constitutional right to bodily integrity was clearly established in 1992 when the events in this case occurred, the Court must next determine whether, on the record before it, the individual defendants are legally responsible, under § 1983, for the alleged harm done to plaintiff.

Plaintiff asserts that the individual defendants are responsible for the harm she suffered because they maintained a policy, custom or practice that permitted injuries to plaintiff in violation of her constitutional rights. There are numerous allegations that the individual defendants had knowledge of instances of Neuman's inappropriate behavior with minor female students before the time in which plaintiff was allegedly abused. There are also various allegations that no effective action, disciplinary or otherwise,

was taken by these three defendants, that they concealed from the parents of other female students and various public officials,[3] including the police department, the various reports and accusations made against Neuman, and that they failed to properly and vigorously investigate various reports of sexual abuse of female students prior to plaintiff's complaints.

■ In *Stoneking II*, the Third Circuit recognized that school officials could be liable for recklessly establishing a policy, procedure or custom of condoning sexual abuse of students by teachers and, further, that the school officials may not escape liability arising from their policy, procedure or custom maintained in deliberate indifference to actions taken by their subordinates. *Stoneking II*, 882 F.2d at 725.

A defendant acts "recklessly" if his or her conduct " 'evince[s] disregard of, or indifference to, consequences, under circumstances involving danger to life or safety to others, although no harm was intended,' or a state of mind that 'either pays no regard to its probably or possibly injurious consequences, or which, though foreseeing such consequences, persists in spite of such knowledge'." *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1089–90 (3d Cir.1991) (Sloviter, C.J., concurring), *cert. denied*, 503 U.S. 985, 112 S.Ct. 1671, 118 L.Ed.2d 391 (1992) (citations omitted). While the term "deliberate indifference" has not been precisely defined in the context of section 1983 civil rights litigation, the Court of Appeals for the Third Circuit has held that it is the same as "reckless indifference", "gross negligence", and "reckless disregard." *Williams v. Borough of West Chester*, 891 F.2d 458, 464 n. 10 (3d Cir.1989).

Keeping in mind the above definitions, the Court will now consider whether the acts or omissions of each ·of the individual defendants "suggests the sort of policy of condona-tion of sexual abuse that would qualify [them] for *Stoneking* liability." *Black v. Indiana Area Sch. Dist.*, 985 F.2d 707, 712 (3d Cir. 1993).

### a. *Eugene Buchlietner*

■ Defendant Buchlietner has been the principal at Canon McMillan High School since August 1992. From August of 1987 to July of 1989, he was assistant principal at the high school. As assistant principal, he was in charge of high school discipline and high school office of student affairs. Deposition transcript of Eugene Buchlietner at 4, 5.

The first time Buchlietner heard of any potential misconduct by Neuman was on February 24, 1993, when he received a report from Steve Andronas, a school guidance counselor. Mr. Andronas informed Buchlietner that he had received a telephone call from plaintiff's aunt, Agnes Seneway. The following week, on March 2, 1993, plaintiff's aunt telephoned Buchlietner directly and related the accusation of sexual harassment against Neuman. Defendants' Brief in Support of Motion of Summary Judgment, Investigation of Seneway Allegations—Notes and Statements, Exhibit Y, at 00492–00495.

Twice the next day, plaintiff's father called Buchlietner; first to discuss generally plaintiff's absence from school and then to inform Buchlietner of the sexual misconduct allegation plaintiff had made against Neuman.

The record evidence shows that defendant Buchlietner did not respond to plaintiff's misconduct allegation with deliberate indifference. He personally investigated the reports; he privately met with plaintiff and her parents a number of times; he talked to teachers, students and Neuman about the alleged misconduct. There is no evidence that either Strang or Bayat informed Buchlietner about any prior rumors or reports about Neuman's past behavior.

---

**3.** Pursuant to then-Pennsylvania state law, "[p]ersons who, in the course of their employment, occupation or practice of their profession, come into contact with children shall report or cause a report to be made in accordance with section 6313 (relating to reporting procedure) when they have reason to believe, ... that a child coming before them in their professional or official capacity is an abused child." Section (b) of the statute specifically included school administrators and school teachers in the class of persons required to report suspected child abuse. 23 Pa.C.S.A. § 6311 (1991).

In 1994, the statute was amended to substitute "reasonable cause to suspect" for "reason to believe." 23 Pa.C.S.A. § 6311 (1994).

There is no evidence that Buchlietner maintained a policy, custom, or practice which played an affirmative role in bringing about the sexual abuse plaintiff suffered or that he acted with deliberate indifference to the health, safety and welfare of the female student body in general and plaintiff in particular. Summary judgment, therefore, should be granted to defendant Buchlietner on the grounds of qualified immunity.

With respect to whether defendants Strang and Bayat are immune from this lawsuit, however, the evidence presented tells a different story.

### b. *Donald Strang*

■ For fifteen years, from 1978 to 1993, Defendant Strang served as the superintendent of the Canon McMillan School District. One of his responsibilities as superintendent included working with the Board of Education in developing effective policies and procedures for the operation of the school system.

According to the deposition testimony of defendant Strang, he received, in the mid–1980's, a copy of an anonymous letter addressed to Manual Pihakis, the athletic director of Canon McMillan, indicating that Neuman was having an inappropriate relationship with a student at the high school. Upon receipt of the letter, Strang contacted both Bayat and Pikahis and advised them to conduct an investigation of the matter.

Approximately a week to ten days later, Pihakis called Strang back· and advised that he thought the letter was a "crank letter." Bayat, a day or two after the conversation with Pihakis, also telephoned Strang and informed him that "there was ... nothing to the letter at all." Deposition of Donald Strang, at 7. Strang did not request written confirmation and neither Pihakis nor Bayat submitted written reports of their investigations. Defendant Strang kept the letter for a few weeks, but eventually discarded it. He did not record this complaint in Neuman's personnel file.

4. Former students will be identified here by their initials only in an attempt to keep their identities

Among the documents submitted in opposition to defendants' motion, plaintiff submits the affidavit of Dr. Chester C. Kent, Superintendent of Keystone Oaks School District, Pittsburgh, Pennsylvania, and a sworn statement from BB,[4] a student who graduated from Canon McMillan High School in 1986.

The affidavit of Dr. Kent states that "[p]rior to November 1988, there was an absence of appropriate policies and procedures to allow administrators to address allegations or rumors of inappropriate teacher contact or activity with a student...." Furthermore, the affidavit states that the failure of the superintendent to adopt such a policy deviated significantly from the standard of care of reasonably prudent administrators and policy makers. *See* Affidavit of Dr. Kent at 11, 14.

In the sworn statement of BB, she states that while a student at Canon McMillan, she was involved in a sexual relationship with Neuman for a year and a half, beginning in 1984. Moreover, BB states that her relationship with Neuman was well known among the students, teachers, and administration at Canon McMillan.

Despite defendants' allegations that there is a lack of any record evidence showing any encouragement or condonation by the individual defendants of Neuman's conduct, the Court concludes that there are genuine issues of material fact pertaining to the question of whether defendant Strang maintained a policy, custom, or practice which played an affirmative role in bringing about the sexual abuse plaintiff suffered and whether he performed in a deliberately indifferent manner by failing to take seriously and investigate fully or substantiate rumors of sexual misconduct by Neuman.

Summary judgment, therefore, should be denied to defendant Strang on the grounds of qualified immunity.

### c. *Nick Bayat*

Defendant Bayat has been the assistant to the superintendent of Canon McMillan School District since 1992. From 1987 to

confidential.

1992, he was the principal at Canon McMillan.

Of the individual defendants, defendant Bayat received the most notice of Neuman's alleged misconduct. There are numerous allegations that Bayat was informed of instances of possible inappropriate conduct between Neuman and female students before the time in which plaintiff was abused and failed to conduct a proper investigation. There are also allegations that, during the time Bayat was principal of the high school, knowledge of Neuman's inappropriate conduct was well known within the community.

The record evidence is inconsistent on the issue of when defendant Bayat first learned or heard of any potential misconduct by Neuman. Bayat contradicts Strang's testimony that Bayat was contacted in the mid–1980s when Strang received the anonymous letter. Bayat testified in his deposition that the first time he heard of any improper conduct concerning Neuman with female students was approximately 1988 or 1989 when William Rosnick contacted him.

In 1988 or 1989, William Rosnick, a 30–year teacher at Canon McMillan and former president of the teacher's union, reported to Bayat that he had personally observed Neuman with a particular female student, DM, on at least two occasions in the evening at the school and that this female student had received a hall pass from Neuman, excusing her from Rosnick's study hall.

Additionally, during the same meeting, Rosnick also told Bayat that in the mid–1980's a member of the Washington County Education Association told him that Neuman was maintaining an apartment with a female student. Based on the description of the female student, Rosnick believed the student to be BB.

In response to Rosnick's concerns about the current student, Bayat testified in his deposition that he "did about three or four different parts of the investigation and ... observe[d] Mr. Neuman in his classroom." Deposition transcript of Bayat, at 13. After interviewing "three, four, maybe even five" female students, and observing Neuman, both in and outside the classroom, Bayat

concluded that Rosnick's concerns were unfounded. Although Neuman denies it, Bayat testified that he spoke with Neuman about the investigation and told him that he would be "keeping an eye on the situation." Deposition transcript of Bayat, at 14.

Bayat did not conduct any investigation into the allegations that Neuman had maintained an apartment with a student, as Bayat considered the rumor "dated" and the information was received after the student had graduated. Bayat did not document either of these reports.

Furthermore, according to plaintiff's evidence, during Bayat's tenure as principal of Canon McMillan, knowledge of Neuman's inappropriate behavior with female students was well known within the community, including knowledge by teachers, students, school board members and other administrators. For example, Albert Cuneo, a school board member from 1980–1986, testified in his deposition that during the time he was on the school board, he heard that Neuman was "fooling around with students." A female student, LT, who graduated from Canon McMillan High School in 1988, gave a sworn statement stating that during the time Bayat was principal "there's (sic) not a teacher that could tell you that they didn't" know about Neuman's inappropriate behavior. Plaintiff's Appendix to Brief in Opposition, Exhibit 5.

Defendant argues that summary judgment should be granted in his favor as there is "no genuine issue as to the proposition that *no* student and no parent *ever* complained to any defendant until the plaintiff did so in this case." Defendants' brief, at 20. While the Court agrees that no other student or parent had complained prior to plaintiff doing so, the Court concludes that there are genuine issues of material fact pertaining to the question of whether defendant Bayat performed in a deliberately indifferent manner by failing to take seriously and investigate fully or substantiate rumors of sexual misconduct by Neuman. Additionally, there are genuine issues of material fact pertaining to the question of whether defendant Bayat maintained a policy, custom or practice that permitted allegations of sexual abuse by Neuman to go unreported or uninvestigated, thus resulting

in injuries to plaintiff in violation of her constitutional rights.

Consequently, summary judgment should be denied to defendant Bayat on the grounds of qualified immunity.

## C.  *Claims Under Title IX*

Defendant School District moves for summary judgment on plaintiff's claims under Title IX[5] arguing that there was no intentional discrimination by the School District and that the School District is not vicariously liable for Neuman's alleged conduct.

In opposition, plaintiff contends that liability under Title IX should be imputed to the School District for the intentional sexual harassment by a school district's employee.

■ In order to prove a prima facie case under Title IX, plaintiff must show:

1.  that [she] was excluded from participation in or denied the benefits of or subjected to discrimination in an educational program;

2.  that the program receives federal assistance; and

3.  that the exclusion was on the basis of sex, i.e., gender.

*Bougher v. University of Pittsburgh,* 713 F.Supp. 139, 143–44 (W.D.Pa.), *aff'd on other grounds,* 882 F.2d 74 (3d Cir.1989).

In order to receive monetary damages under Title IX, Plaintiff must also prove discriminatory intent by the School District against her. *Franklin,* 503 U.S. at 74–75, 112 S.Ct. at 1037–38.

■ As a threshold matter, the Court must determine what standard applies in reviewing plaintiff's Title IX claim of liability against the School District for the sexual harassment by a teacher against a student. The parties note in their briefs that neither the Supreme Court of the United States nor the United States Court of Appeals for the Third Circuit has addressed what entails the requisite "intentional discrimination" needed to sufficiently state a Title IX claim.

Although in *Franklin* the Supreme Court did not directly address the issue of a school district's liability for the intentional acts of its teacher, the Court appears to indicate that it would impose liability on a school district under agency principles for intentional sex discrimination by its agent, the teacher.  *Id.* at 74, 112 S.Ct. at 1037–38 (quoting *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)).

After *Franklin,* courts have adopted several different approaches in imputing liability upon a school district for the sexual harassment by teachers against students, including the following: (1) the agency principles contained in the *Restatement (Second) of Agency* § 219(2)(b) (essentially a "negligent or reckless" standard); *see Rosa H. v. San Elizario Indep. Sch. Dist.,* 887 F.Supp. 140 (W.D.Tex.1995); (2) knowledge or direct involvement by the school district; *see Howard v. Board of Educ.,* 876 F.Supp. 959 (N.D.Ill. 1995) (involving sexual harassment of an employee rather than a student); (3) the Title VII standards of employer liability in sexual harassment cases (i.e. "knew or should have known" for hostile environment and strict liability for quid pro quo harassment), *see Murray v. New York Univ. College of Dentistry,* 57 F.3d 243 (2d Cir.1995); *Pinkney v. Robinson,* 913 F.Supp. 25 (D.D.C.1996) (involving sexual harassment of an employee rather than a student); and (4) strict liability, *see Bolon v. Rolla Public Schools,* 917 F.Supp. 1423 (E.D.Mo.1996); *Leija v. Canutillo Indep. Sch. Dist.,* 887 F.Supp. 947 (W.D.Tex.1995); *Doe v. Petaluma City Sch. Dist.,* 830 F.Supp. 1560 1574–75 (N.D.Cal. 1993) (involving sexual harassment by peers).

Like the instant case, in *Rosa H. v. San Elizario Independent School District,* the district court was faced with the issue of how the discriminatory conduct of a teacher could be imputed to the school district.  "After vociferous disagreement between the parties regarding the form the charge should take," the Court submitted issues to the jury based

---

5.  Title IX provides, in pertinent part,
No person in the United States shall, on the basis of sex, be excluded from participating in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.
20 U.S.C. § 1681(a).

on § 219 of the Restatement (Second) of Agency.[6] *Rosa H.*, 887 F.Supp. at 142.

In reaching its decision, the court decided that in order to impute liability to the school district there must be, in effect, two torts: the intentional tort of the school employee and the negligence tort on the part of the school district. *Id.* at 143.

This Court, guided by the Supreme Court's *Franklin* decision, and adopting the reasoning of the *Rosa H.* court, holds that intentional discrimination by teachers is imputed to the school district under the agency principles contained in the *Restatement (Second) of Agency* § 219(2)(b).

Having determined that the plaintiff's claims under Title IX will be analyzed under agency principles, the question presented is whether summary judgment is an appropriate vehicle in which to excuse the defendant school district from liability for the intentional acts of its agent, James Neuman.

■ To prevail on a claim of intentional discrimination under Title IX, when applying § 219(2)(b) of the Restatement (Second) of Agency, the plaintiff must show that:

1. the school district is subject to Title IX;
2. plaintiff was sexually harassed or abused;
3. by an employee of the school district;
4. the school district had notice, either actual or constructive, of the sexual harassment or abuse;
5. the school district failed to take prompt, effective, remedial measures; and,
6. the conduct of the school district was negligent.

*Rosa H.*, 887 F.Supp. at 143.

■ The Court concludes that genuine issues of material fact exist with regard to whether plaintiff has met all six elements required under § 219(2)(b) of the Restatement (Second) of Agency. Accordingly, the School District's motion for summary judgment on Count IV will be denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment will be granted in part and denied in part. An appropriate order will follow.

## ORDER

AND NOW this 10th day of June, 1996, it is hereby **ORDERED** as follows:

(1) Defendants' motion for summary judgment based on the statute of limitations is **DENIED.**

(2) Defendants' motion for summary judgment on the section 1983 claim against the School District (Count I) is **GRANTED**, as that claim is subsumed by Plaintiff's Title IX claim.

(3) Defendants' motion for summary judgment on the section 1983 claim against Defendant Buchlietner (Count III) is **GRANTED** on the grounds of qualified immunity.

(4) Defendants' motion for summary judgment on the section 1983 claims against Defendants Strang and Bayat (Counts 3 and 5) is **DENIED.**

(5) Defendants' motion for summary judgment on plaintiff's Title IX claim (Count IV) is **DENIED.**

---

**6.** Section 219 of the Restatement (Second) of Agency states:

WHEN A MASTER IS LIABLE FOR THE TORTS OF HIS SERVANTS

(1) A master is subject to liability for the torts of his servants committed while acting in the scope of their employment. (2) A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless: (a) the master intended the conduct or the consequences, or (b) the master was negligent or reckless, or (c) the conduct violated a non-delegable duty of the master, or (d) the servant purported to act or speak on behalf of the principal and there was reliance upon the apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation.